Filed 8/22/19 (unmodified opn. attached)

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THOMAS WU, | B289698 |
| Plaintiff and Appellant, | (Los Angeles County Super. Ct. No. BC675388) |
| v. | |
| O'GARA COACH COMPANY LLC et al., | ORDER MODIFYING OPINION (No change in judgment) |
| Defendants and Respondents. | |

THE COURT:

It is ordered that the opinion filed herein on August 21, 2019 be modified as follows:

1. Delete the entire first paragraph of the opinion and replace it with the following:

In *O'Gara Coach Co., LLC v. Ra* (2019) 30 Cal.App.5th 1115 (*Ra*) this court reversed the trial court's order denying O'Gara Coach Company LLC's motion to disqualify Richie Litigation, P.C. and its attorneys from representing former O'Gara Coach senior executive Joseph Ra in litigation that included cross-actions between O'Gara Coach and Ra. We held O'Gara Coach was entitled to insist that Darren Richie, its former president and chief operating officer and a principal of Richie Litigation, honor his ethical obligation as a member of the

California State Bar to maintain the integrity of the judicial process by refraining from representing former O'Gara Coach employees in litigation against O'Gara Coach when Richie possessed confidential attorney-client privileged information materially related to the matters at issue, even though that information had been obtained by Richie in his capacity as an officer of the client, not its lawyer.  (See *id.* at pp. 1128-1129.)

2.  There is no change in the judgment.

_____
PERLUSS, P. J.          SEGAL, J.          FEUER, J.

Filed 8/21/19 (unmodified version)
**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| THOMAS WU,<br><br>    Plaintiff and Appellant,<br><br>v.<br><br>O'GARA COACH COMPANY<br>LLC et al.,<br><br>    Defendants and<br>    Respondents. | B289698<br><br>(Los Angeles County<br>Super. Ct. No. BC675388) |

APPEAL from an order of the Superior Court of Los Angeles County, Robert Leslie Hess, Judge. Reversed.

Brown, Neri, Smith & Khan, Ethan J. Brown, Rowennakete P. Barnes, James F. Warren IV for Plaintiff and Appellant.

Fisher & Phillips, Wendy McGuire Coats, Christopher J. Boman and Sean T. Kingston for Defendants and Respondents O'Gara Coach Company, LLC and Llewyn Jobe.

In *O'Gara Coach Co., LLC v. Ra* (2019) 30 Cal.App.5th 1115 (*Ra*) this court reversed the trial court's order denying O'Gara Coach Company LLC's motion to disqualify Richie Litigation, P.C. and its attorneys from representing former O'Gara Coach senior executive Joseph Ra in litigation that included cross-actions between O'Gara Coach and Ra. We held O'Gara Coach was entitled to insist that Darren Richie, its former president and chief operating officer and a principal of Richie Litigation, honor his ethical obligation as a member of the California State Bar to maintain the integrity of the judicial process by refraining from representing former O'Gara Coach employees in litigation against O'Gara Coach when Richie possessed confidential attorney-client privileged information materially substantially related to the matters at issue, even though that information had been obtained by Richie in his capacity as an officer of the client, not its lawyer. (See *id*. at pp. 1128-1129.)

Unlike the trial court in *Ra*, the trial court in the case at bar granted O'Gara Coach's motion to disqualify Richie Litigation and its attorneys from representing Thomas Wu, a former sales advisor at O'Gara Coach Bentley, in Wu's lawsuit against O'Gara Coach for race discrimination in violation of the California Fair Employment and Housing Act (FEHA) (Gov. Code, § 12900 et seq.) and other employment-related misconduct. The trial court found that Richie, as the former president and chief operating officer of O'Gara Coach, had significant responsibility in the formulation and implementation of the company's anti-discrimination and anti-harassment policies and it was "more likely than not that in those roles he consulted with outside counsel for O'Gara." In addition, the court ruled it appeared

2

highly probable Richie would be an important percipient witness at trial not only on the issue of the promulgation and enforcement of the policies at issue in the lawsuit but also as to whether Wu's complaints were made known to Richie and what actions, if any, Richie took in response to those complaints.

On appeal Wu argues the order disqualifying Richie Litigation should be reversed because, unlike the situation in *Ra*, O'Gara Coach failed to present evidence that Richie possessed confidential attorney-client privileged information material to the employment dispute between Wu and O'Gara Coach. Wu also argues Richie's potential role as a witness does not justify disqualification because Wu gave his informed consent to Richie being called as a witness and, in any event, Richie would not act as both advocate and witness because other attorneys in the firm are representing Wu. We agree with Wu and reverse the order.

**FACTUAL AND PROCEDURAL BACKGROUND**

1. *Wu's Lawsuit*

On September 12, 2017 Wu, represented by Robert K. Lu of Richie Litigation, sued O'Gara Coach and several of its senior management employees for unlawful discrimination based on race in violation of FEHA; failure to prevent unlawful discrimination; wrongful termination; defamation; harassment; intentional and negligent infliction of emotional distress; negligent hiring, retention and supervision; and workplace intimidation. A first amended complaint, filed December 21, 2017, contained the same causes of action except defamation and workplace intimidation and named as defendants only O'Gara Coach and Llewyn Jobe, Wu's former supervisor at O'Gara Coach Bentley.

3

According to the amended complaint, Wu worked for approximately six years, from 2010 to February 10, 2016, as a sales advisor at O'Gara Coach Bentley in Beverly Hills, one of O'Gara Coach's family of dealerships. Wu alleged Jobe, Tim O'Hara, the general manager at O'Gara Coach Bentley, and Thomas O'Gara, the owner and principal of O'Gara Coach, created a hostile work environment and routinely harassed Wu based on his race and ethnicity. Specifically, Wu alleged Jobe called him and his Chinese friends "chinks" and referred to him as "Buddha" or "sumo wrestler" because of his weight and ethnic heritage. Wu complained about the offensive comments to his supervisors, including Jobe, and to more senior executives at O'Gara Coach Bentley, but nothing was done to correct the situation.

Wu alleged he was a model employee during his tenure at O'Gara Coach Bentley and had never been reprimanded for his performance or other work-related issues. Beginning in early 2016 Wu suspected his employment at the dealership might be in jeopardy and began exploring opportunities at other dealerships in Los Angeles. Following an interview at one of those dealerships on February 10, 2016, Wu was fired. No explanation was given to Wu for O'Gara Coach's decision to terminate his employment.

2. *The Motion To Disqualify Richie Litigation*

O'Gara Coach and Jobe jointly answered the first amended complaint on January 22, 2018 and several days later moved to disqualify Richie Litigation and each of its attorneys from representing Wu. The motion argued disqualification was appropriate because Richie is a key percipient witness whose testimony would be adverse to the interests of his client and

4

because he had been privy to confidential and privileged documents and information during his employment at O'Gara Coach that were directly related to the issues in the lawsuit.

a. *Richie's role at O'Gara Coach*

O'Gara Coach hired Richie in September 2013 as general manager for its Westlake Village location. He was subsequently promoted to director of sales operations for the company and then in November 2014 to president and chief operating officer.

According to the declaration of Thomas O'Gara in support of the motion to disqualify, as president and chief operating officer Richie was charged with creating, implementing and enforcing workplace policies and practices for all of the company's various dealership locations, including O'Gara Coach Bentley where Wu worked; and one of his job responsibilities was to ensure a workplace environment free of unlawful harassment and discrimination. In addition, Richie was one of two individuals to whom employee complaints were to be reported, including violations of the company policy against harassment and discrimination.[1] Several O'Gara Coach employees submitted declarations in support of the motion stating the office culture

---

[1] Christine Rogers, the company's controller during the relevant time period, was the other employee to whom complaints were to be reported. Rogers stated in her declaration that she was not aware of any employee complaints made during Richie's tenure that were not brought to his attention or that he was not involved in investigating and resolving. She also declared she was not aware of any complaints made by Wu about workplace conditions. Lance Westerlund, general manager of preowned vehicles for O'Gara Coach, similarly declared he was not aware of any complaints by Wu.

and work environment at the company resulted directly from Richie's hands-on approach to management.

In his declaration Thomas O'Gara also explained O'Gara Coach does not employ in-house lawyers and, while serving as president, Richie was a primary point of contact for the company's outside counsel on many legal matters: "Mr. Richie would regularly engage and direct legal counsel on O'Gara Coach's behalf, regarding day-to-day advice on a litany of subjects, the development, implementation, and enforcement of policies and procedures, and on all aspects of pending litigation, and pre and post-litigation functions."

When Richie was initially hired by the company, Thomas O'Gara knew Richie had graduated from law school and had experience overseeing legal matters. (Richie graduated from law school in 2003.)[2] According to O'Gara, it was this "legal education and professed experience that provided me comfort in assigning to him decision-making authority during his tenure, including without limitation engaging outside legal counsel and overseeing (on a companywide basis) all legal matters affecting the company."

Richie's employment with O'Gara Coach was terminated on February 10, 2016. In his declaration Thomas O'Gara stated O'Gara Coach and Richie executed a severance agreement in which Richie agreed not to file claims against O'Gara Coach or to assist others in bringing claims against the company. That

---

[2]     Richie successfully sat for the California bar examination in February 2017, a year after he left O'Gara Coach. He was admitted to the bar on August 27, 2017 and formed Richie Litigation that same summer.

document, which is described as subject to confidentiality provisions, was not filed with the trial court, but counsel offered to make it available to the court for in camera inspection.

b. *Richie's communications with outside counsel*

Usama Kahf, a partner with Fisher & Phillips LLP, submitted a declaration in support of the motion to disqualify stating his firm has provided labor and employment advice to O'Gara Coach for many years. According to Kahf, "[b]etween November 2014 and February 2016, Richie was my primary point of contact with [O'Gara Coach] on various litigation and non-litigation employment matters, because he was the President and Chief Operating Officer during that period." Kahf exchanged more than 600 emails and took part in at least 50 telephone conversations with Richie relating to Fisher & Phillips's representation of the company during that period.

Kahf described the matters he discussed with Richie as including strategy and activity in pending litigation pertaining to former and current employees; compliance with wage and hour laws and regulations; termination and severance issues related to O'Gara Coach employees; "responding to various complaints made by [O'Gara Coach] employees about a litany of workplace issues"; and "investigations of employee misconduct and complaints."

Kahf's declaration also stated Richie directed Kahf and his law firm regarding the development, drafting and/or revision of the O'Gara Coach policy prohibiting discrimination and harassment. "As my primary point of contact at [O'Gara Coach], and due to his direct involvement in policy drafting and implementation and in his role of decision-maker, Richie had direct knowledge and possession of [O'Gara Coach's] confidential,

7

business proprietary, and trade secret information, attorney-work product, and attorney-client privileged communications. Moreover, Mr. Richie, as [O'Gara Coach's] President and COO, was the primary individual responsible for implementing and enforcing [O'Gara Coach's] workplace policies and procedures."

Halbert Rasmussen, formerly a partner at Arent Fox LLP, stated in his declaration in support of the motion that between November 2014 and February 2016 he "regularly communicated with Mr. Richie in the course of my representation of O'Gara Coach in various legal matters, as did other attorneys at Arent Fox LLP who were assisting me with our representation of O'Gara Coach." Rasmussen had at least 40 telephone calls with Richie during that period, virtually all of which in his view constituted communications subject to the attorney-client privilege in favor of O'Gara Coach.

Keith D. Kassan, who serves as outside general counsel to O'Gara Coach, in his declaration in support of the motion described Richie as a "primary point of contact" for O'Gara Coach on 28 litigated and nonlitigated matters affecting its sales and service departments. Kassan exchanged more than 300 emails and at least 40 telephone conversations with Richie relating to his representation of O'Gara Coach.

According to Kassan, due to Richie's "direct involvement in policy drafting, implementation, and enforcement, and in his role as decision-maker, Richie had direct knowledge and possession of O'Gara Coach's confidential, business proprietary, and trade secret information, attorney-work product, and attorney-client privileged communications." In addition, "Richie was the primary person responsible for developing, implementing and

enforcing O'Gara Coach's workplace policies and practices, during which time Plaintiff Thomas Wu's allegations arose."

   c. *The grounds advanced for disqualification*

O'Gara Coach advanced three grounds in support of its motion to disqualify Richie Litigation and the three lawyers then affiliated with the firm from representing Wu:  First, citing former rule 5-210 of the State Bar Rules of Professional Conduct,[3] O'Gara Coach argued Richie would be a key percipient witness in the case and permitting him (or another attorney in his firm) to serve as an advocate, while Richie was also a witness, would result in a clear detriment to O'Gara Coach.  Second, implicitly referring to former rules 3-100 and 3-310 requiring protection of a client's confidential information and avoiding the representation of adverse interests, O'Gara Coach argued Richie, during his employment at the company, had been directly involved with, and oversaw, matters substantially related to the claims Wu was asserting and had been privy to confidential and privileged documents and information.  As a result,

---

[3]    Effective November 1, 2018, former rule 5-210 was replaced by rule 3.7 as part of a comprehensive revision of the State Bar Rules of Professional Conduct.  Both former rule 5-210(C) and rule 3.7(a)(3) permit a lawyer to act as an advocate in a trial in which he or she is likely to be a witness with the informed written consent of the client.  Rule 3.7(b) allows a lawyer to act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by the rules relating to duties owed to current clients (rule 1.7) or former clients (rule 1.9).

All references to rules and to former rules are to the State Bar Rules of Professional Conduct unless otherwise stated.

9

disqualification was necessary to protect O'Gara Coach's privileged information. Finally, as a former senior executive of O'Gara Coach, Richie owed continuing fiduciary duties to the company, including a duty to maintain the confidentiality of its privileged information.

    3. *Wu's Opposition to the Motion To Disqualify*

Wu's opposition to the motion to disqualify emphasized, first, that Richie never had any type of attorney-client relationship with O'Gara Coach, either during his tenure at the company (which was before he had been admitted to the State Bar of California) or after he left its employ; and second, that Richie was not Wu's lawyer or otherwise personally involved in his representation in this case.

With respect to the specific grounds for disqualification advanced by O'Gara Coach, Wu explained he had been fully informed about Richie's potential role as a percipient witness and had already consented to it. Accordingly, O'Gara Coach's reliance on the advocate-witness rule for disqualification of Richie Litigation was misplaced.

Disqualification because of the purported relationship between Richie's work at O'Gara Coach and the subject matter of Wu's lawsuit was similarly unwarranted, Wu argued. Disqualification based on a duty of loyalty (avoiding conflicts of interest, current or successive) or the duty to protect confidential information is dependent on the existence of an attorney-client relationship between the individual (or law firm) to be disqualified and the party moving for disqualification. Here, Richie had never represented O'Gara Coach in any legal capacity.

In a declaration in opposition to the motion, Richie explained, while he was president and chief operating officer of

O'Gara Coach, Thomas O'Gara provided him with information regarding workplace and EEOC policies in place at the company. According to Richie, "[w]hile I did not develop these policies, I had input into them as I believed that a fair and harassment-free workplace was critical to success of a business and, more importantly, the well-being of the employees." O'Gara, however, did not abide by those policies, "either in spirit or in fact." To the contrary, O'Gara routinely fostered an atmosphere of exclusion, specifically at the Beverly Hills dealership where Wu worked, and often referred to Asians as "chinks."

Finally, that Richie might have some form of continuing fiduciary duties to O'Gara Coach, Wu contended, is not a cognizable ground for disqualification of a nonlawyer; the existence of an attorney-client relationship is essential.

4. *The Trial Court's Ruling*

At the March 20, 2018 hearing, after listening to argument of counsel, the court granted the motion to disqualify Richie and Richie Litigation. The court explained it was persuaded Richie "had significant responsibility for the formulation and implementation of the anti-harassment and anti-discrimination policies for O'Gara [Coach], and it is more likely than not that in those roles he consulted with outside counsel for O'Gara [Coach]. [¶] In addition, it appears highly probable that Mr. Richie may be an important principal witness to the issues of promulgation and enforcement policies/practice in this suit, that he has personal knowledge whether plaintiff complained to him or whether any of plaintiff's complaints were communicated to him and what action he took or did not take."

11

## DISCUSSION

### 1. *Standard of Review*

A trial court's decision to grant or deny a motion to disqualify counsel is generally reviewed for abuse of discretion. (*People v. Suff* (2014) 58 Cal.4th 1013, 1038; *In re Charlisse C.* (2008) 45 Cal.4th 145, 159; *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 (*SpeeDee Oil*).) "As to disputed factual issues, a reviewing court's role is simply to determine whether substantial evidence supports the trial court's findings of fact . . . . As to the trial court's conclusions of law, however, review is de novo; a disposition that rests on an error of law constitutes an abuse of discretion." (*Charlisse C.*, at p. 159; see *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.) While the trial court's "'application of the law to the facts is reversible only if arbitrary and capricious'" (*Charlisse C.*, at p. 159), "where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law." (*SpeeDee Oil*, at p. 1144; accord, *Ra*, *supra*, 30 Cal.App.5th at p. 1124; *California Self-Insurers' Security Fund v. Superior Court* (2018) 19 Cal.App.5th 1065, 1071; *Castaneda v. Superior Court* (2015) 237 Cal.App.4th 1434, 1443.)

### 2. *Ra*

In *Ra*, *supra*, 30 Cal.App.5th 1115 we reviewed O'Gara Coach's unsuccessful motion to disqualify Richie Litigation in a different lawsuit involving claims between O'Gara Coach and one of its former employees, Joseph Ra. At the outset of our analysis, quoting the Supreme Court's decision in *SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1145, we explained, "When deciding a motion to disqualify counsel, '[t]he paramount concern must be to preserve

12

public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield to ethical considerations that affect the fundamental principles of our judicial process.'" (*Ra*, at p. 1124; see *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807, 818 ["'[a]n attorney has an obligation not only to protect his client's interests but also to respect the legitimate interests of fellow members of the bar, the judiciary, and the administration of justice'"].)

Recognizing, as had the trial court, that Richie had never acted as counsel for O'Gara Coach and, therefore, that the general rules regarding disqualification based on successive representation did not apply (*Ra, supra,* 30 Cal.App.5th at p. 1128),[4] we considered cases in which disqualification had been based on the acquisition of an adversary's privileged communication by means other than a prior attorney-client relationship. (*Id.* at pp. 1126-1127.) In particular, we discussed *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, in which the court had held disqualification was proper because counsel's newly hired paralegal had access to confidential information relating to pending litigation while working for

---

[4]    Disqualification is required in successive representation cases if the current representation involves the legal services performed by the attorney for the former client (e.g., *Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109, 111; *Dill v. Superior Court* (1984) 158 Cal.App.3d 301, 306) or, even if not the same matter, if a substantial relationship exists between the former representation and the current representation (*SpeeDee Oil, supra,* 20 Cal.4th at p. 1146; *Flatt v. Superior Court* (1994) 9 Cal.4th 275, 283).

13

opposing counsel, and *Shadow Traffic Network v. Superior Court* (1994) 24 Cal.App.4th 1067, in which the court held disqualification was warranted when an expert witness hired by a law firm had previously consulted with, and obtained confidential information from, opposing counsel regarding the pending litigation.

We also analyzed *Rico v. Mitsubishi Motors Corp.*, *supra*, 42 Cal.4th 807, in which the Supreme Court held, when a lawyer comes into possession of materials that clearly appear to be protected by the attorney-client privilege or work product doctrine and it is reasonably apparent the materials were disclosed without the holder of the privilege intending to waive it, the lawyer receiving the material is prohibited from using them. Instead, the lawyer may examine the materials no more than necessary to ascertain their privileged status and then must immediately notify the party entitled to the privilege about the situation. (*Id.* at pp. 816-818.) It is proper to disqualify counsel who fails to act in accord with these ethical responsibilities and makes use of the inadvertently disclosed confidential information. (*Id.* at pp. 810, 819; accord, *McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1120 ["'[d]isqualification is proper as a prophylactic measure to prevent future prejudice to the opposing party from information the attorney should not have possessed'; an affirmative showing of existing injury from the misuse of privileged information is not required"]; see *Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 43-44, 54-55 [attorney received opponent's privileged documents from his own client, who had stolen them when fired, rather than through inadvertent production by opposing party or its counsel; disqualification was proper prophylactic remedy

14

based on evidence attorney had reviewed the documents more than minimally necessary to determine their privileged nature and had affirmatively used some of the substantive information in the privileged documents].)

Applying the principles articulated in these cases, we reversed the order denying the motion to disqualify Richie Litigation and its attorneys, holding disqualification was required as a prophylactic measure because the firm was in possession of confidential information, protected by O'Gara Coach's attorney-client privilege, concerning Ra's allegedly fraudulent activities at issue in the pending litigation. (*Ra*, *supra*, 30 Cal.App.5th at pp. 1128-1129; see *Roush v. Seagate Technology, LLC* (2007) 150 Cal.App.4th 210, 219 [although the "classic disqualification case involves the attorney switching sides, . . . [¶] [i]n other cases, counsel may be disqualified where counsel has obtained the secrets of an adverse party in some other manner"; "[d]isqualification is warranted in these cases, not because the attorney has a duty to protect the adverse party's confidences, but because the situation implicates the attorney's ethical duty to maintain the integrity of the judicial process"].)

We explained that O'Gara Coach had presented evidence to the trial court, undisputed by Ra, that Richie, while employed as a senior executive at the company, participated in meetings, phone calls and email communications with outside counsel investigating Ra's activities "that developed theories material to O'Gara Coach's defense and forming the basis for its cross-claims [against Ra] in this litigation and that are protected by the lawyer-client privilege." (*Ra*, *supra*, 30 Cal.App.5th at p. 1129.) That privilege belonged to O'Gara Coach; and Richie, even though no longer an officer of the company, had no right to

15

disclose the protected information without O'Gara Coach's consent. (*Ibid.*, citing *Costco Wholesale Corp. v. Superior Court* (2009) 47 Cal.4th 725, 732 ["'[t]he attorney-client privilege, set forth at Evidence Code section 954, confers a privilege on the client "to refuse to disclose, and to prevent another from disclosing a confidential communication between client and lawyer"'"].) Now that Richie was a member of the California State Bar, we concluded, "O'Gara Coach is entitled to insist that he honor his ethical duty to maintain the integrity of the judicial process by refraining from representing former O'Gara Coach employees in litigation against O'Gara Coach that involve matters as to which he possesses confidential information." (*Ra,* at p. 1129.)[5]

> 3. *O'Gara Coach Failed To Present Evidence Richie Possessed Privileged Information Materially Related to the Pending Litigation*

Central to our holding in *Ra* was undisputed evidence, based on the declaration of one of O'Gara Coach's outside attorneys, that Richie possessed attorney-client privileged information directly related to O'Gara Coach's defense of the claims being asserted against it in the litigation then before us and to O'Gara Coach's prosecution of its cross-claims against Ra in that lawsuit. In contrast, the declarations in this case demonstrate, at most, that Richie possesses presumptively

---

[5]     In the final section of our opinion in *Ra*, we observed no evidence had been presented that Richie had been screened from any of the attorneys at Richie Litigation who had worked on the case and held that Richie Litigation, not just Richie, must be disqualified under established rules for vicarious disqualification. (*Ra, supra*, 30 Cal.App.5th at pp. 1131-1132.)

16

privileged information regarding O'Gara Coach's development, implementation and enforcement of its workplace polices, as well as knowledge of other confidential information regarding the company, its operations and its general litigation strategies. None of the declarations suggests Richie was involved in any way in investigating Wu's complaints of a hostile work environment or had any discussions with O'Gara Coach's outside counsel regarding Wu's claims.

Whether the principles articulated in *Ra* are properly extended to justify disqualification of Richie Litigation under the circumstances here raises the problem of what has sometimes been referred to in case law and scholarly literature as "playbook" information. (See, e.g., *Khani v. Ford Motor* Co. (2013) 215 Cal.App.4th 916, 921-922; *Fremont Indemnity Co. v. Fremont General Corp*. (2006) 143 Cal.App.4th 50, 69 (*Fremont Indemnity*); Painter, *Advance Waiver of Conflicts* (2000) 13 Geo. J. Legal Ethics 289, 319; Wolfram, *The Vaporous and the Real in Former-Client Conflicts* (1996) 1 J. Inst. for Study of Legal Ethics 133, 138.)

As described by Professor Charles Wolfram, the typical playbook problem involves a claim by a former client that the lawyer learned confidential information of a general kind during the prior representation: "Common variants on the claim are assertions that the lawyer learned the former client's settlement strategy and philosophy, or what sequence of demands or other tactics the former client uses in negotiating business deals, how the former client generally conducts its business, how the client deals with the stresses of litigation, what quirks of personality the client possesses or suffers from, or, in general, what 'hot buttons' can be pushed to cause panic or confusion to the former

17

client.  Confidential information about any one of those elements, it is claimed, would give the lawyer significant advantage if it were permissible to represent an adversary against the former client, regardless of the factual dissimilarities between the two representations in other respects.  Hence, it is claimed, confidential information protected by the substantial relationship test should include such playbook information." (Wolfram, *Former-Client Conflicts* (1997) 10 Geo. J. Legal Ethics 677, 723, fns. omitted).

Under California law a law firm is not subject to disqualification because one of its attorneys possesses information concerning an adversary's general business practices or litigation philosophy acquired during the attorney's previous relationship with the adversary.  (*Banning Ranch Conservancy v. Superior Court* (2011) 193 Cal.App.4th 903, 918 ["[m]erely knowing of a former client's general business practices or litigation philosophy is an insufficient basis for disqualification based upon prior representation"].)  To be protected through a disqualification order, "'the information acquired during the first representation [must] be "material" to the second; that is, it must be found to be directly at issue in, or have some critical importance to, the second representation.'" (*Fremont Indemnity*, *supra*, 143 Cal.App.4th at p. 69; accord, *Khani v. Ford Motor Co.*, *supra*, 215 Cal.App.4th at pp. 921-922 [attorney's acquisition of general information about Ford's policies, practices and procedures while defending the company in lemon law cases did not require his disqualification in a lemon law case against Ford on behalf of the purchaser of a defective Lincoln Navigator]; see *Farris v. Fireman's Fund Ins. Co.* (2004) 119 Cal.App.4th 671, 680; see generally ABA Model Rules Prof. Conduct, rule 1.9,

18

comment [3] ["[i]n the case of an organizational client, general knowledge of the client's policies and practices ordinarily will not preclude a subsequent representation; on the other hand, knowledge of specific facts gained in a prior representation that are relevant to the matter in question ordinarily will preclude such a representation"]; Rest.3d Law Governing Lawyers, § 132, com. (d)(iii), p. 382 [only when information concerning a former client's policies and practices "will be directly in issue or of unusual value in the subsequent matter will it be independently relevant in assessing a substantial relationship"].)

The trial court's disqualification order in this case necessarily rests on implied findings that Richie acquired confidential and privileged information as a result of his prior position at O'Gara Coach that is material to his law firm's current representation of Wu. Yet, separating what Richie may know simply because he participated as a nonlawyer executive in events at the company from confidential information he possesses based at least in part on attorney-client privileged communications, and focusing our analysis on the latter category, the declarations submitted by O'Gara Coach describe only classic playbook information. Nowhere does O'Gara Coach demonstrate the required material link between Richie's knowledge of the development and implementation of the company's workplace policies and the issues presented by Wu's lawsuit. While O'Gara Coach argues Richie was the primary point of contact at the company for its outside general labor and employment counsel regarding the handling of employee complaints, it identifies no category of information gained by Richie as a result of those contacts that is directly at issue in, or has some unusual value or critical importance to, Richie Litigation's representation of Wu.

19

Unlike the situation in *Ra*, Richie did not assist O'Gara Coach's lawyers in their investigation of Wu's harassment and discrimination claims. To be sure, Richie possesses potentially relevant information about O'Gara Coach's formal antidiscrimination and anti-harassment policies and whether they were properly implemented. That knowledge, however, is based on Richie's role at the company as a nonlawyer senior executive. How those policies were actually developed, on the other hand, may include information protected by O'Gara's attorney-client privilege; but the origins of the company's policies, as opposed to their enforcement or lack of enforcement, is not material to Wu's lawsuit.

Whether viewed as a lack of substantial evidence to support its implied findings of fact or as an erroneous determination of the appropriate legal standard to apply in these unusual circumstances, the trial court's order disqualifying Richie Litigation and its attorneys based on Richie's knowledge of confidential and privileged information must be reversed.[6]

---

[6] Although, based on the evidence submitted in support of O'Gara's motion to disqualify, we conclude the confidential attorney-client information Richie may possess is not material to the issues in Wu's lawsuit, Richie Litigation's apparent decision not to screen Richie from any participation in Wu's representation is troublesome. (See generally rule 1.10(a)(2).)

20

### 4. *Richie's Likely Testimony as a Percipient Witness Does Not Justify Disqualification of Richie Litigation or Other Attorneys at the Firm Under the Advocate-witness Rule*

Whatever their other shortcomings, the declarations filed in support of, and opposition to, the motion to disqualify fully support the trial court's finding that Richie will likely be called as a percipient witness at trial: O'Gara Coach intends to call Richie to discuss his role in the development, implementation and enforcement of the company's anti-harassment and anti-discrimination policies and to describe the workplace culture at its Beverly Hills dealership when he and Wu worked there; Wu might call Richie to testify to Thomas O'Gara's statements regarding preferential treatment for white employees and O'Gara's frequent use of racially offensive epithets. However, that Richie might testify at trial does not warrant disqualification of other lawyers at Richie Litigation under the advocate-witness rule.

Under rule 3.7(a)(3) a lawyer is prohibited from acting as an advocate in a trial in which that lawyer is likely to be a witness unless "the lawyer has obtained informed written consent from the client." That exception is applicable here; for, as discussed, Wu submitted a declaration in the trial court averring he had given his informed consent to Richie Litigation's representation of him, recognizing that Richie would likely be called as a witness at trial. (See *Maxwell v. Superior Court* (1982) 30 Cal.3d 606, 619, fn. 9 ["*the State Bar has concluded that a fully informed client's right to chosen counsel outweighs potential conflict or threat to trial integrity posed by counsel's appearance as witness*"], disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

21

While this exception does not necessarily preclude disqualification of an attorney who may act as both advocate and witness when there has been "'a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process'" (*Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 579; see *Lyle v. Superior Court* (1981) 122 Cal.App.3d 470, 482)—a finding not made by the trial court here—rule 3.7(b) now provides a lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless that representation is barred by separate ethical rules relating to a lawyer's duties to current or former clients.[7] (See also ABA Model Rules Prof. Conduct, rule 3.7(b) ["[a] lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by Rule 1.7 ['Conflict of Interest: Current Clients'] or Rule 1.9 ['Duties to Former Clients']"].)

As to Wu, Richie Litigation's current client, his informed written consent eliminates any potential conflict prohibition that

[7] Rule 3.7 states in full, "(a) A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless: [¶] (1) the lawyer's testimony relates to an uncontested issue or matter; [¶] (2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or [¶] (3) the lawyer has obtained informed written consent from the client. If the lawyer represents the People or a governmental entity, the consent shall be obtained from the head of the office or a designee of the head of the office by which the lawyer is employed. [¶] (b) A lawyer may act as advocate in a trial in which another lawyer in the lawyer's firm is likely to be called as a witness unless precluded from doing so by rule 1.7 or rule 1.9."

22

might otherwise exist because Richie's testimony may, in some respects, be adverse to Wu's interests.  (See rule 1.7(b) [a lawyer shall not, without the informed written consent from each affected client, represent a client if there is a significant risk the lawyer's representation will be materially limited by the lawyer's responsibilities to a former client]; see also Rest.3d Law Governing Lawyers, § 108, com. f & i, pp. 152 & 153 [other lawyers in a testifying lawyer's firm may serve as advocates for a party in the proceeding, despite disqualification of one or more firm lawyers as advocates, if the representation would not involve a conflict of interest with the client; if testimony adverse to the client is anticipated, the client must consent to the firm continuing as advocate].)  As to O'Gara Coach, Richie's former employer, but not his "former client," as discussed, Richie's ethical obligations as a current member of the State Bar, recognized in *Ra*, *supra*, 30 Cal.App.5th 1115, do not preclude Richie Litigation's continuing role as Wu's counsel.

## DISPOSITION

The order disqualifying Richie Litigation and its attorneys other than Darren Richie from representing Wu is reversed.  Wu is to recover his costs on appeal.


PERLUSS, P. J.


We concur:


SEGAL, J.          FEUER, J.


23