Filed 2/27/24

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| MAGNUS SUNDHOLM,<br><br>    Plaintiff and Appellant,<br><br>    v.<br><br>HOLLYWOOD FOREIGN<br>PRESS ASSOCIATION et al.,<br><br>    Defendants and<br>    Respondents. | B324842<br><br>(Los Angeles County<br>Super. Ct. No.<br>21STCV44898) |

APPEAL from an order of the Superior Court of Los Angeles County, Wendy W. Y. Chang, Judge. Reversed.

One LLP, David W. Quinto and Joanna Ardalan for Plaintiff and Appellant.

Latham & Watkins, Marvin S. Putnam, Robert J. Ellison and Chandler S. Howell for Defendants and Respondents.

_____

After he was expelled from membership in the Hollywood Foreign Press Association (HFPA), Magnus Sundholm sued HFPA, alleging breach of contract and other claims. HFPA

moved to disqualify One LLP and its attorneys from representing Sundholm in this litigation based on the review by David W. Quinto, an attorney at One LLP, of at least two documents HFPA claimed were protected by the attorney-client privilege. The trial court granted the motion, and Sundholm appealed.

We agree with the trial court that Quinto improperly refused to produce documents in response to a subpoena from HFPA seeking HFPA documents in Quinto's possession that were privileged or to provide a privilege log. But disqualification of an attorney affects a party's right to counsel of choice, and it should not be used to punish an attorney for improper conduct. Quinto's conduct could have been addressed by an award of sanctions or, if appropriate, reporting the conduct to the State Bar of California. The drastic remedy of disqualification of counsel is appropriate only where the attorney improperly or inadvertently received information protected by the opposing party's attorney-client privilege, the information is material to the proceeding, *and* its use would prejudice the opposing party in the proceeding. Here, there was no showing the HFPA documents would prejudice HFPA in the proceeding. We reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

A.    *Sundholm's Lawsuit*

HFPA is a nonprofit mutual benefit corporation whose members are entertainment journalists living in the United States who publish their work in media outlets outside the United States. Sundholm became a member of HFPA in 2008. On October 19, 2021, after Sundholm filed a complaint with the Internal Revenue Service regarding HFPA's tax-exempt status, Sundholm was expelled from the organization.

2

In December 2021 Sundholm filed a complaint, and in June 2022 an amended complaint, against HFPA and 14 members of its board of directors.[1] Sundholm asserted claims for breach of contract, breach of the implied covenant of good faith and fair dealing, violation of the common law right to fair procedure,[2] and wrongful discharge, all arising from his expulsion from HFPA membership.

In support of his breach of contract cause of action, Sundholm alleged HFPA's bylaws constituted "a contract among HFPA's members," which set forth the obligations of membership and the grounds for the board to remove and impose sanctions on members. Sundholm alleged HFPA breached its bylaws by revoking his membership because the bylaws allowed the board to expel a member only for violation of an express obligation in

---

[1]     Judgment was entered in favor of the individual defendants after the trial court sustained their demurrer to the amended complaint without leave to amend. The individual defendants are not parties to the appeal of the disqualification order.

[2]     "[A] private organization's decisionmaking process can, under certain circumstances, be subject to a common law right of fair procedure which includes judicial review." (*Yari v. Producers Guild of America, Inc.* (2008) 161 Cal.App.4th 172, 174.) This common law right is typically applied in cases concerning the "exclusion or expulsion from membership in a gatekeeper organization, such as a labor union, [which] hold that 'the right to practice a lawful trade or profession is sufficiently "fundamental" to require substantial protection against arbitrary administrative interference, either by government [citations] or by a private entity.'" (*Id.* at p. 176; see *Potvin v. Metropolitan Life Ins. Co.* (2000) 22 Cal.4th 1060, 1066 ["[W]hen the right to fair procedure applies, the decisionmaking 'must be both substantively rational and procedurally fair.'"].)

3

the bylaws, and Sundholm had not violated any rules, regulations, or policies of the HFPA. The amended complaint quoted four sections of the bylaws and attached as an exhibit a draft copy of the bylaws dated July 1, 2021 (draft bylaws).[3]

B.      *The Motion To Strike*

Two days after the amended complaint was filed, counsel for HFPA, Robert Ellison, realized the version of the bylaws attached to the amended complaint was a draft copy that had been prepared by HFPA's outside counsel.[4] Each page of the draft was labelled in the upper right corner with the words "Privileged & Confidential Attorney-Client Communication" and included the name of HFPA's outside counsel and the date of the draft. The draft also contained a note from HFPA's outside counsel purportedly containing legal advice.

On June 17, 2022 Ellison sent a letter to Quinto asserting the draft bylaws were privileged and requesting Quinto remove the exhibit from all public filings. Ellison also demanded Quinto provide an accounting of all privileged HFPA documents in his possession and "cease all review" of those documents. In response, Quinto asserted the draft bylaws were not protected by any privilege and the note from counsel was "ministerial."

---

[3]      The version of the bylaws in the appellate record is dated August 4, 2021. Sundholm replaced the original exhibit (with the July 1, 2021 version of the bylaws) with the August version after the trial court granted HFPA's motion to strike.

[4]      According to Ellison, after he learned the July 1, 2021 draft bylaws had been publicly filed, he reviewed prior filings in the case and found Sundholm had attached the same version of the draft bylaws to another filing six weeks earlier.

4

Nonetheless, Quinto offered to re-file the draft bylaws with the note from counsel redacted.

On June 20, 2022 HFPA filed an ex parte application to strike the draft bylaws from the record. HFPA explained the draft bylaws had been drafted by outside counsel in June 2021 and included legal advice. Because HFPA members were required to approve any amended bylaws, the draft had been "shared confidentially with HFPA members for their feedback and approval." Sundholm was a member of HFPA at the time. The HFPA members adopted amended bylaws in August 2021.

In opposition to the motion to strike Sundholm argued any privilege attached to the draft bylaws had been waived when the draft was sent to HFPA members and the media. In an accompanying declaration, Sundholm stated he had received the draft bylaws on July 20, 2021 from a member of the HFPA board of directors. The cover letter accompanying the bylaws was addressed to all HFPA members and explained "the proposed new Bylaws are the result of many months of input from you and work by our lawyers." The letter urged members to approve the draft bylaws as written. Sundholm added that the draft bylaws were marked "'Privileged & Confidential,'" but the cover letter did not advise the members not to share them with third parties or that they should be treated as privileged or confidential.

On June 21, 2022, after hearing argument from counsel, the trial court granted the motion to strike and ordered the two filed copies of the draft bylaws (one attached to the amended complaint and another attached to Sundholm's declaration opposing a motion to quash) be stricken and removed from the court's docket. The next day Sundholm filed a corrected amended

complaint that attached HFPA's then-current bylaws as adopted in August 2021.

C.     *The Motion To Disqualify One LLP*

After the trial court's ruling on the motion to strike, Ellison informed Sundholm's attorneys he intended to move for disqualification of One LLP. Ellison also sent an email to Quinto demanding that he destroy any copies of the draft bylaws and provide to Ellison copies of all HFPA documents or communications that appeared to be privileged. In response, on June 22, 2022 Quinto emailed Ellison, explaining that, in addition to the draft bylaws, "[l]ast year I received from another source a very similar document—identical contents, slightly different cover page. I have not received any other documents marked as privileged and have no reason to believe any documents I have received are reasonably subject to a claim of privilege."

On June 29, 2022 HFPA served a deposition subpoena on One LLP seeking all documents in the law firm's possession that HFPA had created or disseminated, including the document described by Quinto in his June 22, 2022 email. One LLP objected to the subpoena, asserting among other grounds that the requested documents were not relevant to the lawsuit and requested information protected by the attorney work-product doctrine.[5] The objection stated further that "to the extent [One LLP] has responsive documents, it will not produce them."

---

[5]     Quinto argued at a later hearing that disclosure of HFPA documents in his possession would disclose work product in another lawsuit in which Quinto represented Sundholm's girlfriend.

6

On July 19, 2022 HFPA moved to disqualify One LLP. HFPA asserted that, by reviewing the draft bylaws despite the fact they were clearly marked as privileged, attorneys at One LLP had violated their ethical obligations as set forth in *State Comp. Ins. Fund v. WPS, Inc.* (1999) 70 Cal.App.4th 644 ("*State Fund*").[6]  HFPA also disputed Quinto's characterization of the note from counsel in the draft as "ministerial," arguing it was advice relating to "conditions under which a non-profit is required to obtain certain approval from the California Attorney General."  Further, Sundholm and his attorney had a history of using "precisely [this] type of information" in "frivolous lawsuits" and "leaks to the press."  HFPA also argued that given One LLP's

---

[6]     Pursuant to *State Fund*, *supra,* 70 Cal.App.4th at pages 656 to 657, "When a lawyer who receives materials that obviously appear to be subject to an attorney-client privilege or otherwise clearly appear to be confidential and privileged and where it is reasonably apparent that the materials were provided or made available through inadvertence, the lawyer receiving such materials should refrain from examining the materials any more than is essential to ascertain if the materials are privileged, and shall immediately notify the sender that he or she possesses material that appears to be privileged.  The parties may then proceed to resolve the situation by agreement or may resort to the court for guidance with the benefit of protective orders and other judicial intervention as may be justified.  We do, however, hold that whenever a lawyer ascertains that he or she may have privileged attorney-client material that was inadvertently provided by another, that lawyer must notify the party entitled to the privilege of that fact."  (See *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807, 817-818 [adopting the *State Fund* holding and extending it to material protected by the work product doctrine].)

7

refusal to produce documents in response to the subpoena, HFPA was unable to assess "the scope of One LLP's invasion into the HFPA's protected information."  Accordingly, HFPA concluded, "[t]here can be no serious dispute that Mr. Quinto has reviewed other privileged information that he and his client will continue to use against the HFPA."[7]

In his opposition to the motion to disqualify, Sundholm argued, as he had in opposition to the motion to strike, that although the initial draft of the bylaws created by HFPA's lawyers was subject to the attorney-client privilege, HFPA waived any privilege by intentionally sending the draft to its members and the media.  Thus, Sundholm's attorneys' ethical duties pursuant to *State Fund* were not implicated.

D.      *The Demurrer, Motion To Compel, and Request for Dismissal*

While the motion to disqualify was pending, HFPA and the individual defendants demurred to the amended complaint. HFPA also moved to compel compliance with the document subpoena served on One LLP.  As it did in the disqualification motion, HFPA argued Sundholm and Quinto "have spent the last several years exploiting the HFPA's privileged and confidential information" through frivolous lawsuits and leaks to the press. Thus, "HFPA will continue to be prejudiced, and the fairness of these proceedings significantly questioned, without a full

---

[7]      HFPA's motion also argued Quinto should be disqualified because he was a necessary fact witness regarding Sundholm's expulsion from HFPA membership.  HFPA does not assert this argument on appeal.

accounting of all the HFPA's privileged and confidential information in One LLP's possession."

On October 20, 2022, after a hearing, the trial court sustained the demurrer without leave to amend on all causes of action as to the individual defendants. The court sustained the demurrer as to HFPA on all causes of action except wrongful discharge.

At the same hearing, the trial court heard argument on the motion to disqualify. The court stated the issue "comes down to . . . whether or not there's a continuing unfair advantage. . . . A simple violation of an ethical rule does not in and of itself warrant disqualification." After reviewing Quinto's email to HFPA's counsel in which he stated he had another document similar to the bylaws, the court observed, "It appears to me that you might have documents that are privileged . . . . But I cannot say for certain."

Quinto responded that the subpoena was directed to documents that were not attorney-client communications, but rather, were his attorney work product. Further, he did not have any "other documents that [were] labelled as attorney-client privilege [or] that were labelled as confidential." Nor did he have "any other communication between a lawyer and the HFPA." However, Quinto continued, "I have one document that I have previously attached to pleadings in [another] case that seems to refer to advice that might have come from a lawyer." At the end of the hearing, the trial court asked Quinto to confirm he only had one document that could be privileged, to which Quinto responded, "Yes." The court followed up, "Then I'm going to give you a chance to do the right thing with those. Please don't make me issue sanctions against you." The court then continued the

9

hearing on the motion to disqualify to be heard simultaneously with the motion to compel.

On November 9, 2022, the day before the scheduled hearing on the motions to compel and disqualify, Sundholm submitted a request for dismissal without prejudice of the one remaining cause of action against HFPA. Rather than enter the dismissal immediately, the trial court continued the hearing and requested the parties brief the issue of whether the court retained jurisdiction to rule on the motions given the request for dismissal.

E.      *The Ruling on the Motion To Disqualify Counsel*

At the continued hearing on November 18, 2022, the trial court found the request for dismissal divested it of jurisdiction to decide the motion to compel, but the court retained jurisdiction to decide the ancillary matter of disqualification. The court announced it intended to grant the disqualification motion because Quinto admitted he had "at least one" privileged document, while claiming he had no others, but One LLP refused to produce any documents, privilege logs, or sworn discovery responses to confirm that no other privileged documents were in its possession. The court further opined Sundholm had dismissed the remaining cause of action in an effort to avoid a ruling on the motion to compel. Thus, HFPA's concern that One LLP possessed additional privileged documents was "well-taken" and "potentially impact[ed] future issues between these parties."

Quinto responded by explaining that, in addition to the draft bylaws, he had been in possession of a one-page document authored by a non-lawyer that appeared to include speculation about an attorney's opinion. Quinto said he had destroyed the document six months earlier. Quinto offered that if HFPA

10

provided a list of documents it had sent to Sundholm, Quinto would confirm or deny whether he had any of the documents, and he would be happy to "disgorge" any documents identified as attorney-client communications. Quinto also argued that HFPA had failed to show that any privileged information he allegedly had in his possession was likely to have a substantial continuing effect on the proceedings (meaning this appeal).

The trial court found there was a discrepancy in Quinto's representations concerning the potentially privileged document he claimed he had destroyed in that Quinto at a later hearing told the court he still had a copy. Nonetheless, the court stated that Quinto's argument there was no continuing effect on the proceeding "would have actually probably worked if you had responded to the discovery that was propounded on you." However, "because you're refusing to respond to the request that would have confirmed your statements under oath that you are not in possession of any remaining privileged documents and, instead, you are choosing to dismiss this case in an effort to avoid the effect of [an order to compel], I find that the defendant's concern that you continue to be in possession of privileged and confidential material belonging to the defendant, . . . combined with your misunderstanding of what the privilege is and what your [ethical] obligations . . . are, I think that results in, I think, a real significant potential that you are in continued possession of privileged materials . . . that may affect future judicial proceedings." The court granted the motion to disqualify counsel and issued a written decision the same day.

11

The court entered the dismissal of the remaining cause of action on January 10, 2023. Sundholm filed a timely notice of appeal from the order disqualifying counsel.[8]

**DISCUSSION**

A.    *Governing Law and Standard of Review*

"The trial court's power to disqualify counsel is derived from the court's inherent power '[t]o control in furtherance of justice, the conduct of its ministerial officers.' (Code Civ. Proc., § 128, subd. (a)(5); [citation].) Disqualification motions implicate several important interests, among them are the clients' right to counsel of their choice, the attorney's interest in representing a client, the financial burden of replacing a disqualified attorney, and tactical abuse that may underlie the motion." (*Roush v. Seagate Technology, LLC* (2007) 150 Cal.App.4th 210, 218-219 (*Roush*); accord, *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1145 (*SpeeDee Oil*).) "Although disqualification necessarily impinges on a litigant's right to counsel of his or her choice, the decision on a disqualification motion 'involves more than just the interests of the parties.' [Citation.] When ruling on a disqualification motion, '[t]he paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar. The important right to counsel of one's choice must yield

---

[8]    Sundholm's notice of appeal also seeks review of the trial court's November 17, 2022 judgment dismissing the individual defendants after sustaining the demurrer without leave to amend. In April 2023 this court granted the parties' request to delay briefing on the appeal from the dismissal order pending the outcome of the appeal as to the disqualification order.

12

to ethical considerations that affect the fundamental principles of our judicial process.'" (*Clark v. Superior Court* (2011) 196 Cal.App.4th 37, 47-48.) "It must be remembered, however, that disqualification is a drastic course of action that should not be taken simply out of hypersensitivity to ethical nuances or the appearance of impropriety." (*Roush*, at p. 219; see *City of San Diego v. Superior Court* (2018) 30 Cal.App.5th 457, 470 (*San Diego*) ["We do not disqualify a lawyer from representing a client to punish the lawyer's mistakes or even bad behavior."].)

"Protecting the confidentiality of communications between attorney and client is a fundamental principle of our judicial process and an opposing attorney who breaches that principle may be disqualified from further participation in the litigation." (*McDermott Will & Emery LLP v. Superior Court* (2017) 10 Cal.App.5th 1083, 1119-1120; accord, *SpeeDee Oil, supra*, 20 Cal.4th at p. 1146.) However, "mere exposure to the confidences of an adversary does not, standing alone, warrant disqualification." (*Roush, supra*, 150 Cal.App.4th at p. 219; accord, *State Fund, supra*, 70 Cal.App.4th at p. 657; *Rico v. Mitsubishi Motors Corp.* (2007) 42 Cal.4th 807, 819.) When an attorney has improperly or inadvertently received documents or information protected by an opposing party's attorney-client privilege, disqualification may be a proper "'prophylactic measure to prevent future prejudice to the opposing party from information the attorney should not have possessed.'" (*McDermott*, at p. 1120; see *Wu v. O'Gara Coach Co., LLC* (2019) 38 Cal.App.5th 1069, 1083 [disqualification warranted only when privileged information possessed by attorney is "found to be directly at issue in, or have some critical importance to" the current litigation]; *San Diego, supra,* 30 Cal.App.5th at p. 472

13

[disqualification proper only when there is "a 'genuine likelihood' that the attorney's status or misconduct 'will affect the outcome of the proceedings before the court'"].)

When a party moves to disqualify opposing counsel based on allegedly improper receipt of privileged or confidential information, the party seeking disqualification has the initial burden to show its adversary possesses confidential information materially related to the proceedings before the court. (See *DeLuca v. State Fish Co., Inc.* (2013) 217 Cal.App.4th 671, 686; *Roush, supra*, 150 Cal.App.4th at p. 220.) The moving party need not disclose the actual information asserted to be confidential but must provide the court with the nature of the information and its material relationship to the proceeding. (*Roush*, at p. 220.)

A trial court's decision to grant or deny a motion to disqualify counsel is generally reviewed for an abuse of discretion. (*People v. Suff* (2014) 58 Cal.4th 1013, 1038; *In re Charlisse C.* (2008) 45 Cal.4th 145, 159; *SpeeDee Oil, supra*, 20 Cal.4th at p. 1143.) "As to disputed factual issues, a reviewing court's role is simply to determine whether substantial evidence supports the trial court's findings of fact . . . . As to the trial court's conclusions of law, however, review is de novo; a disposition that rests on an error of law constitutes an abuse of discretion." (*Charlisse C.*, at p. 159; see *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712.) While the trial court's "'application of the law to the facts is reversible only if arbitrary and capricious'" (*Charlisse C.*, at p. 159), "where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law." (*SpeeDee Oil*, at p. 1144; accord, *California Self-Insurers' Security Fund v.*

14

*Superior Court* (2018) 19 Cal.App.5th 1065, 1071; *Castaneda v. Superior Court* (2015) 237 Cal.App.4th 1434, 1443.)

B. *The Trial Court Erred in Disqualifying Sundholm's Attorneys Because There Was No Evidence Sundholm's Attorneys Possessed Privileged Information That Would Prejudice HFPA in the Pending Litigation*

As discussed, the trial court found One LLP had been in possession of at least two privileged or potentially privileged documents: the draft bylaws and a document that appeared to contain a non-lawyer's speculation about attorney advice (that Quinto claimed he had destroyed six months earlier). The court further found Quinto was in violation of his ethical obligations under *State Fund* because he failed to cease reviewing these documents when he realized they were potentially privileged.[9]

---

[9] Because we find HFPA failed to establish prejudice, we need not address the trial court's finding Quinto violated his ethical duties pursuant to *State Fund*. However, we note the cases cited by HFPA in support of *State Fund*'s application involve situations where counsel received privileged or confidential documents as a result of inadvertence or impropriety. (See, e.g., *Militello v. VFARM 1509* (2023) 89 Cal.App.5th 602, 622 [*State Fund* applied to emails attorney received from a client that the client had improperly obtained in violation of adversary's right to privacy]; *McDermott Will & Emery LLP v. Superior Court, supra,* 10 Cal.App.5th at p. 1112 [*State Fund* applied where client gave his attorney copy of privileged email that had been inadvertently forwarded to him]; *Clark v. Superior Court, supra,* 196 Cal.App.4th at p. 53 [*State Fund* applied where client gave attorney documents that the client had obtained from his employer in violation of nondisclosure agreement].)

While the court stated the circumstances (principally that One LLP refused to respond to the subpoena and provide a privilege log) "strongly suggest[] that [Sundholm] has other HFPA materials in [his] possession [and] that [he] will freely use them disadvantageously against [HFPA]," the court failed to explain how Sundholm would use the privileged information to HFPA's disadvantage in this lawsuit—the required material link between the privileged information and the issues presented in this lawsuit.

HFPA did not present any evidence to support a finding of prejudice. Other than HFPA's conclusory references to Sundholm's prior use of private information to disparage HFPA, there is no indication in the record how the asserted privileged

---

These cases do not address situations where, as here, a document is intentionally sent to a party for a proper purpose and the party shares it with the party's counsel. It is not clear the procedures outlined in *State Fund* would apply to such a situation. (See, e.g., *Roush, supra*, 150 Cal.App.4th at p. 219 ["where the attorney's client is the attorney's source of privileged information relating to the litigation, courts typically refuse to allow the disqualification, concluding that clients do not act inappropriately in providing information to their own attorney"]; *Fox Searchlight Pictures, Inc. v. Paladino* (2001) 89 Cal.App.4th 294, 310 ["in-house counsel may disclose ostensible employer-client confidences to her own attorneys to the extent they may be relevant to the preparation and prosecution of her wrongful termination action against her former client-employer"]; *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 591 ["If the disclosure is made by the attorney's own client, disqualification is neither justified nor an effective remedy. A party cannot 'improperly' disclose information to its own counsel in the prosecution of its own lawsuit."].)

documents contained information directly relevant to this case or could be used to HFPA's disadvantage. Indeed, HFPA does not argue the portions of the draft bylaws quoted in the amended complaint are privileged, and further, the quoted language appears to be identical to that in the August 2021 version of the bylaws that is part of the appellate record. Likewise, HFPA provides no explanation for how the note from counsel contained in the draft bylaws could affect the outcome of this case.

We are sympathetic to HFPA's position that it cannot know the extent of the detriment caused by One LLP's possession of privileged documents because One LLP refused to respond to the discovery subpoena seeking to obtain that information. However, the disqualification issue arose because Sundholm shared the draft bylaws with Quinto. HFPA had knowledge of what documents it provided to its members that it claimed were confidential (as acknowledged by its general counsel in his declaration), yet it never asserted that Quinto had possession of any of those documents. Nor did HFPA explain how Quinto's possible possession of one of those confidential documents would have prejudiced HFPA in this litigation. Moreover, the appropriate mechanism to address Quinto's failure to respond to the subpoena is not disqualification of the law firm, but rather, an order compelling discovery responses, imposing sanctions, or referring Quinto to the State Bar. (See *San Diego, supra*, 30 Cal.App.5th at pp. 471-472 [disqualification is not appropriate "'to punish dereliction that will likely have no substantial continuing effect on future judicial proceedings,'" but rather, "'[t]here are other sanctions which in that situation must suffice, including imposition of attorneys fees and costs incurred by the other side as a result of the misconduct . . . and reporting of the

17

misconduct to the State Bar of California so that it may determine whether disciplinary action is appropriate'"].)[10]

Sundholm's dismissal of the case before the trial court could enter an order compelling production, even if motivated by gamesmanship as the trial court found, does not support disqualification. In the absence of any reasonable probability the privileged information would have provided Sundholm with an unfair advantage or otherwise affected the outcome of the proceeding, disqualification was improper.[11] (See *Wu v. O'Gara Coach Co., LLC, supra*, 38 Cal.App.5th at p. 1084 [reversing disqualification order where moving party failed to show privileged information was "directly at issue in, or has some unusual value or critical importance" to the litigation]; *San Diego, supra*, 30 Cal.App.5th at p. 473 [reversing disqualification order where there was no "'reasonable probability' or 'genuine likelihood' that [party's] misconduct will provide it with an unfair advantage"]; *DeLuca v. State Fish Co., Inc., supra*, 217 Cal.App.4th at p. 692 [reversing disqualification order where defendant "failed in its burden of establishing that . . .

---

[10] The trial court retained power, for example, to sanction Sundholm by awarding reasonable expenses, including attorneys' fees. (See Code Civ. Proc., § 128.5, subd. (a) ["A trial court may order a party, the party's attorney, or both to pay any reasonable expenses, including attorney's fees, incurred by another party as a result of bad-faith actions or tactics that are frivolous or solely intended to cause unnecessary delay."].)

[11] Even if on appeal we were to reverse the judgment in favor of the individual defendants, those defendants would need to file a separate motion for disqualification showing how they are prejudiced in the litigation by Quinto's possession of the documents.

18

confidential information materially related to the proceedings before the court was conveyed to [adverse party]"]; cf. *McDermott Will & Emery LLP v. Superior Court, supra,* 10 Cal.App.5th at p. 1125 [substantial evidence supported disqualification where attorneys had demonstrated willingness to use privileged document in formulating strategy and order would prevent future prejudice from exploitation of document's contents]; *Clark v. Superior Court, supra,* 196 Cal.App.4th at p. 55 [same].)

## DISPOSITION

The order disqualifying One LLP and its attorneys is reversed. Sundholm is to recover his costs on appeal.


FEUER, J.

We concur:


SEGAL, Acting P.J.


MARTINEZ, J.