Filed 5/26/21  Devora v. Costco CA2/2

# NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

## SECOND APPELLATE DISTRICT

## DIVISION TWO

| | |
|---|---|
| ROCIO DEVORA, | B306090 |
| Plaintiff and Respondent, | (Los Angeles County Super. Ct. No. BC704678) |
| v. | |
| COSTCO WHOLESALE CORPORATION, | |
| Defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County.  Olivia Rosales, Judge.  Affirmed.

Yukevich | Cavanaugh, James J. Yukevich, Nina J. Kim and David A. Turner for Defendant and Appellant.

Vaziri Law Group, Siamak Vaziri and David Shay for Plaintiff and Respondent.

_____

Appellant Costco Wholesale Corporation (Costco) Costco appeals from the denial of its motion to disqualify the attorneys representing respondent Rocio Devora (Devora) against Costco in her personal injury action. We find no error and affirm the trial court's order.

## FACTS

Devora sued Costco for premises liability and negligence. She alleged that she slipped and fell on a slippery substance while walking close to the checkout isles at a Costco store in the City of Lakewood.

Soon after, Costco moved to disqualify the attorneys representing Devora, the Vaziri Law Group (VLG) and David C. Shay (Shay) (collectively Devora's attorneys). Costco claimed that VLG was employing Federico Stea (Stea), a nonlawyer who previously worked for Costco's counsel, Yukevich | Cavanaugh (Yukevich firm). Citing *In re Complex Asbestos Litigation* (1991) 232 Cal.App.3d 572, 596 (*Complex Asbestos*), Costco argued that Stea possessed confidential attorney-client information that is materially related to Devora's pending litigation, and that Devora's attorneys could not rebut the presumption that Stea used or disclosed that information while working at VLG.

In support of its motion, Costco submitted overlapping declarations from its attorneys, James J. Yukevich (Yukevich) and Nina J. Kim (Kim).

Yukevich declared: Starting in 2017, Stea worked at the Yukevich firm as a law clerk while in law school, and then while awaiting results from the California Bar Exam. He "was assigned to the team of attorneys and paralegals handling the defense of Costco in at least twenty (20) different actions. Two of these cases . . . were filed by VLG[.] . . . [¶] . . . [¶] During his

2

work on the defense of Costco while employed by [the Yukevich firm], [Stea] learned confidential attorney-client information related to Costco's defense in personal injury actions similar if not identical to" Devora's case. He "frequently prepared drafts of initial case evaluation and damages evaluations for Costco."

Yukevich explained that the preparation of initial case evaluations for Costco required analysis of various topics, including: "(1) a particular plaintiff's counsel, including his or her education, experience, and verdict and settlement history; (2) analysis of the venue, including the assigned judge's education and experience and relevant past rulings, the statistical data for the applicable jury pool and whether Costco considers a particular jury pool favorable; (3) summaries of the plaintiff's alleged causes of action; (4) analyses of defenses[,] including identification of the applicable statutes of limitations and other issues that may support a demurrer as to causes of action or motion to strike claims for damages; (5) analyses and summaries of privileged and confidential Costco client materials; (6) summaries of the plaintiff's alleged injuries, including calculation of alleged medical expenses; and (7) strategic recommendations, proposed handling, and action items for the defense of the case."

The preparation of initial damages evaluations for Costco involved, inter alia: "(1) [analysis of] the plaintiff's medical records including pertinent diagnoses, prognoses and other information; (2) analysis of the plaintiff's responses to written discovery requests and documents produced; (3) analysis of the plaintiff's deposition testimony if any; and (4) research into damages issues specific to the plaintiff."

3

While working at the Yukevich firm, Stea "had access to Costco case files and was tasked with analyzing case files, identifying critical documents in each, and maintaining the critical documents in each case. [Stea] would also communicate with plaintiffs' counsel in connection with cases involving Costco. Furthermore, through his employment with [the Yukevich firm], [Stea] was exposed to and learned [the Yukevich firm's] case evaluation approach and litigation defense strategy as it pertained to Costco." After Stea failed the California Bar Exam three times, the Yukevich firm terminated his employment. Six months later, Yukevich learned that Stea had accepted employment in Shay's practice group at VLG.[1]

In opposition, Devora's attorneys argued that disqualifying them was unnecessary because VLG successfully implemented ethical screening procedures to prevent Stea from working on, or communicating about, Costco matters, and because Costco failed to demonstrate that Stea worked on matters substantially related to Devora's case.

VLG offered the declarations of Stea and Shay.

Per Stea, while he was at the Yukevich firm, he worked on Costco cases for 10 months. He added, "Of the work I did perform, my tasks were limited to menial tasks and did not involve confidential attorney-client communications from the client. I did not communicate directly with Costco regarding any trade secrets, nor any confidential or proprietary information."

---

[1] Shay worked at the predecessor of the Yukevich firm, Yukevich, Calfo & Cavanaugh, from 2007 to 2012, which was before the Yukevich firm represented Costco. Costco's motion to disqualify was not based on Shay's employment with Yukevich, Calfo & Cavanaugh.

Stea further declared, among other things, that when he was hired at VLG, he was told that he would be screened off from, and denied access to, any Costco files. He averred that he has not worked on any Costco matter at VLG, he has not "at any time communicated case strategies to anyone at [VLG]," and that his new employers at VLG avoid speaking to him about his previous employer and Costco.

Shay declared that prior to hiring Stea, Shay informed him "that he would be ethically screened from involvement in any manner with any Costco cases," and that "he would *not* be assigned to any Costco matters and could not assist in any such matters in any capacity." Also, Shay told Stea that "steps would be taken prior to [Stea's] employment to implement an ethical screen to ensure that he could not and would not convey any information about Costco he may have gleaned from his employment at" the Yukevich firm. "Consistent with VLG's pre-hire directive that [Stea] *not* work on any Costco matters in any way, VLG implemented intensive procedures for an ethical screen *prior* to [Stea] commencing work." For example, VLG created tailored e-mail distribution lists that screened Stea from receiving any e-mails relating to Costco. Shay explained that all Costco files are stored by handling attorneys in file cabinets labeled "Costco—Subject to Ethical Screen—Restricted Access;" Stea does not have a key to the locked cabinets, nor does he have the ability to access files; all VLG employees, including Stea, were informed of the ethical screen and told that any violation of the ethical screen would result in termination; and, all attorneys and staff including new employees, are periodically reminded of the ethical screen and the consequences that would flow from a violation of the ethical screen. Shay further explained that the

5

ethical screening measures have been meticulously followed as follows. Stea has been assigned to, and works on, cases that do not involve Costco. He has not divulged any information about Costco, and he has not been asked to divulge any trial strategies used by the Yukevich firm.

The trial court denied Costco's motion to disqualify Devora's attorneys, ruling that there was insufficient evidence of a substantial relationship between the subject of the prior and current representations because the parties were not identical even if the claims were similar. Further, the trial court determined that Costco failed to establish that Stea obtained confidential attorney-client information about Costco during his employment at the Yukevich firm. Finally, the trial court determined that Shay's declaration established that VLG put mechanisms "in place to prevent Stea from divulging tainted information, or from coming into contact with any information concerning 'Costco' matters," and that Stea's declaration averred that he has not worked on any Costco matters while at VLG, nor has he communicated any of the Yukevich firm's case strategies to anyone at VLG.

Costco appealed.

## DISCUSSION

### I. Standard of Review.

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion." (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143.) We review a trial court's factual findings under the substantial evidence test. (*In re Charlisse C.* (2008) 45 Cal.4th 145, 159.) In doing so, we resolve every evidentiary conflict and indulge every reasonable inference in favor of the

6

prevailing party if the evidence supporting the challenged ruling is of ponderable legal significance, and if it has reasonable, credible, and solid value. (*Oregel v. American Isuzu Motors, Inc.* (2001) 90 Cal.App.4th 1094, 1100.) "The doctrine of implied findings requires the appellate court to infer the trial court made all factual findings necessary to support the judgment. [Citation.]" (*Fladeboe v. American Isuzu Motors Inc.* (2007) 150 Cal.App.4th 42, 58.) Under the substantial evidence test, we indulge reasonable inferences that can be deduced from the evidence. (*Antelope Valley Press v. Poizner* (2008) 162 Cal.App.4th 839, 849, fn. 11.)

An order is presumed correct. (*Denham v. Superior Court* (1970) 2 Cal.3d 557, 564 (*Denham*).) All intendments and presumptions are indulged to support it on matters as to which the record is silent, and error must be affirmatively shown. An appellant has the burden of establishing that the lower court erred or abused its discretion. It is not the role of appellate courts to construct a legal argument for an appellant. If no argument is provided on a particular point, the court may treat it as waived and pass it without consideration. (*Ibid.*)

Even if a trial court erred, we will not reverse a challenged order unless an appellant suffered prejudice under *People v. Watson* (1956) 46 Cal.2d 818 (*Watson*). *Watson* held that there is a miscarriage of justice under article VI, section 13 of the California Constitution sufficient to reverse a trial court's ruling only when an appellate court "is of the 'opinion' that it is reasonably probable that a result more favorable to the appealing party would have been reached in the absence of the error." (*Watson*, *supra*, 46 Cal.2d at p. 836.)

## II. Disqualification Law.

"[T]he proper rule . . . for disqualification based on nonlawyer employee conflicts of interest should be as follows. The party seeking disqualification must show that its present or past attorney's former employee possesses confidential attorney-client information materially related to the proceedings before the court. The party should not be required to disclose the actual information contended to be confidential. However, the court should be provided with the nature of the information and its material relationship to the proceeding. [Citation.] [¶] Once this showing has been made, a rebuttable presumption arises that the information has been used or disclosed in the current employment. . . . To rebut the presumption, the challenged attorney has the burden of showing that the practical effect of formal screening has been achieved. The showing must satisfy the trial court that the employee has not had and will not have any involvement with the litigation, or any communication with attorneys or coemployees concerning the litigation, that would support a reasonable inference that the information has been used or disclosed. If the challenged attorney fails to [establish that effective screening has been achieved], then the court may disqualify the attorney and law firm." (*Complex Asbestos*, *supra*, 232 Cal.App.3d at p. 596, fn. omitted.)

Courts apply a different test for disqualification when an attorney represents a current client against a former client. In that situation, the test is whether that matters embraced within the pending suit are substantially related to the matters involved in the prior representation, i.e., whether information material to the current dispute would have been imparted to the attorney. (*Jessen v. Hartford Casualty Ins. Co.* (2003) 111 Cal.App.4th 698,

706–708.) If the attorney had a direct attorney-client relationship with the former client, the courts presume the attorney "acquired confidential information relevant to the current representation if it is congruent with the former representation. [Citations]." (*Id*. at p. 709.) Where the former attorney-client relationship is attenuated, "then the presumption will not be applied in the absence of an adequate showing that the attorney was in a position vis-à-vis the client to likely have acquired confidential information material to the current representation." (*Id*. at p. 711.) If there is a presumption, disqualification is automatic. (*Id*. at pp. 710–711.)

"Under California law a law firm is not subject to disqualification because one of its attorneys possesses information concerning an adversary's general business practices or litigation philosophy acquired during the attorney's previous relationship with the adversary. [Citation.] To be protected through a disqualification order, "'the information acquired during the first representation [must] be 'material' to the second; that is, it must be found to be directly at issue in, or have some critical importance to, the second representation.'" [Citation.]" (*Wu v. O'Gara Coach Co.*, *LLC* (2019) 38 Cal.App.5th 1069, 1083.)

## III. Analysis.

Costco argues that the trial court erred (1) when it applied the substantial relationship test applicable to attorneys instead of the materially related test for nonattorneys, and when it failed to apply the substantial relationship test correctly; (2) when it determined that Costco failed to show that Stea possessed Costco's confidential attorney-client information; and (3) when it determined that VLG established that Stea had been adequately

9

screened from all Costco cases and files during his employment at VLG.

As we discuss below, Costco's arguments as to the second and third points fail and any error with respect to the first point is therefore harmless.

A. <u>Whether Stea Possessed Confidential Attorney-Client Information</u>.

The trial court concluded that Costco failed to establish that Stea obtained confidential attorney-client information. Impliedly, the trial court credited Stea's declaration that his work on Costco matters did not involve confidential attorney-client information, and it found that the menial tasks performed by Stea did not include the tasks identified by Costco. Instead of analyzing whether there was sufficient evidence to support these express and implied findings in its opening brief, Costco merely assumes Stea possessed attorney-client information and then reargues its motion. Costco failed to explain why Stea's assertions that his work did not involve confidential attorney-client information and that he only performed menial tasks on Costco files were insufficient under the substantial evidence test to rebut the claim that he possessed confidential attorney-client information. Arguments should be tailored to the standard of review. Failure to acknowledge the proper scope of review concedes a lack of merit. (*Ewald v. Nationstar Mortgage, LLC* (2017) 13 Cal.App.5th 947, 948.)

In the reply, Costco notes that Stea did not dispute the specific facts in Costco's detailed description of his job responsibilities or participation in privileged communications, and that he did not give any specific facts when he stated that he performed only menial tasks. This argument is not tied to the

10

standard of review and, in any event, we consider arguments raised for the first time in the reply to be waived. (*Reichardt v. Hoffman* (1997) 52 Cal.App.4th 754, 764.) We are left with the presumption that Stea's declaration was sufficient to support the trial court's implied finding and that the trial court was justified in denying the motion.

     B.  <u>Whether VLG Created an Adequate Screen</u>.

     Precedent establishes that "[t]he specific elements of an effective screen will vary from case to case, although two elements are necessary:  First, the screen must be timely imposed; a firm must impose screening measures when the conflict first arises.  It is not sufficient to wait until the trial court imposes screening measures as part of its order on the disqualification motion.  [Citations.]  Second, it is not sufficient to simply produce declarations stating that confidential information was not conveyed or that the disqualified attorney did not work on the case; an effective wall involves the imposition of *preventive measures* to guarantee that information will not be conveyed. [Citation.]" (*Kirk v. First American Title Ins. Co.* (2010) 183 Cal.App.4th 776, 810, fn. omitted (*Kirk*).)  Various measures can be employed, such as the physical, geographic, and departmental separation of personnel.  But "the inquiry before a trial court considering the efficacy of any particular [screen] is *not* to determine whether all of a prescribed list of [measures] (beyond timeliness and the imposition of prophylactic measures) have been established; it is, instead, a case-by-case inquiry focusing on whether the court is satisfied that the tainted [employee] has not had and will not have any improper communication with others at the firm concerning the litigation." (*Id*. at p. 811.)

11

Per Shay, "VGL implemented intensive procedures for an ethical screen *prior* to [Stea] commencing work." Shay explained that Stea was told before he was hired that he would not be allowed to work on Costco cases. In addition, Shay noted that VLG created e-mail distribution lists so that Stea would not receive any Costco related e-mails, VLG locked file cabinets containing Costco files and denied Stea access to those file cabinets, and VLG admonished all employees that they would be terminated if they violated the ethical screen. Stea declared that he was told, prior to being hired, that he would be screened off from any Costco matters. He explained that he and VLG had observed the ethical screen.

These declarations, and the reasonable inferences arising from them, supported the trial court's findings and implied findings that VLG implemented various screening procedures both before and as soon as Stea began working for VLG, and that those procedures were in fact effective in ensuring that Stea never worked on Costco matters or communicated anything he may have learned at the Yukevich firm to VLG. Given these findings and implied findings, the trial court did not abuse its discretion, i.e., exceed the bounds of reason (*Denham, supra,* 2 Cal.3d at p. 566), by denying Costco's motion to disqualify VLG. After all, if the ethical screening was effective, Costco was protected and there is no basis to deprive Devora of her chosen counsel.

In urging us to adopt a contrary view, Costco argues that VLG was required to implement screening before it hired Stea but made no such showing. We disagree on both counts. Costco cites *Complex Asbestos*, *supra*, 232 Cal.App.3d at p. 594, but it says "screening should be implemented" prior to a hiring, not

12

that it must be. In the next sentence, *Complex Asbestos* does use mandatory language but only says that screening "must take place at the outset to prevent any confidences from being disclosed." (*Ibid.*) It does not define "outset" (*ibid*), but we take this to mean the moment there is a risk that confidences are in jeopardy. Moreover, *Kirk* only requires screening measures when a conflict first arises. Thus, we conclude that screening is required only as soon as reasonably necessary to protect the confidences of the former client. In any event, there was prehiring screening here. Shay declared that he told Stea before he was hired that he would not be allowed to work on Costco matters. Shay also declared, "[T]he sum total of any discussion of Costco with . . . Stea has been to (1) establish and maintain the screening procedures . . . , and (2) provide a declaration to oppose Costco's motions for disqualification." This statement covers both pre- and posthiring time periods. It is unclear what more Costco expected VLG or Shay to do prior to Stea being hired. Notably, there would have been no rational reason to implement any other screening procedures until Stea had accepted employment. Further, until he was hired and commenced working, he could not have worked on, or had access to, any Costco matters.

Costco contends that Shay's declaration was insufficient because it was vague and ambiguous as to when screening was implemented. We again disagree. Shay specifically explained that he did not discuss Costco matters with Stea other than to establish and maintain the screening procedures and then, later, to provide a declaration related to Costco's motion. Also, Shay advised Stea prior to hiring him that he would be ethically screened from Costco matters, and he could not work on Costco matters. Prior to Stea beginning work, VLG implemented e-mail

13

distribution lists to avoid Stea from receiving Costco related e-mails.  Nothing about these statements are vague and ambiguous.  In his declaration, Shay referred to locked cabinets and an admonition to employees about the screen and the consequences of violating it.  In isolation, these references are temporally vague.  But the context of Shay's whole declaration gives rise to the reasonable inference that these measures were implemented as soon as Stea began working.  After all, the tenor of Shay's declaration portrayed diligence regarding the ethical screen starting with Stea's interview.

Turning to a new point, Costco contends that VLG admitted that Stea has electronic access to Costco's case files.  At the hearing, Yukevich expressed concern about Stea's access to electronic case files involving Costco.  Shay stated, "One, we have done what we can do to limit [him from] . . . inadvertently obtaining information about . . . pending matters.  We've done so in the form of tailored lists of e-mails.  [Stea] has been removed from lists of e-mails.  [¶]  I think what [Yukevich] is saying, essentially, is that . . . there [is] a means by which someone who was really intent on circumventing a screen could circumvent a screen[.]  I agree, someone who is really intent on being a bad actor can circumvent any screen."

We do not read Shay's statement as a concession that Stea has access to Costco related files.  Rather, Shay mused about the possibility.  But even if Shay made such a concession, it would not change our analysis.  At most, any such concession would merely admit that Stea could surreptitiously and without authorization access such files.  It would not suggest that Stea has had or will have any involvement with Devora's case, which is the touchstone for the analysis under *Complex Asbestos*.  The

14

reasonable inference from Shay's declaration is that if Stea ever did access electronic files involving Costco, he would be fired and that none of Costco's confidential attorney-client communication would be divulged to attorneys or other employees at VLG. Even if Shay's statement supported Costco's position, it would simply be conflicting evidence. We must disregard conflicting evidence under the substantial evidence test.

Costco maintains that the trial court should have considered VLG's failure to ask Costco to consent to Stea's employment at VLG as evidence that it has a highly casual view of its ethical duties and therefore the ethical screen that it implemented was insufficient. Also, Costco posits that VLG failed to make the "required" showing that Stea was separated physically, geographically, or departmentally from attorneys working on cases involving Costco. As to both points, Costco relies on *Kirk*. But *Kirk* does not suggest that a law firm must give notice to the client of opposing counsel when employing a nonlawyer who used to work for that opposing counsel, or that the failure to give such notice undermines the adequacy of an ethical screen as a matter of law. At most, the court indicated that when evaluating whether *an attorney* has been ethically screened from cases involving his or her former client, a trial court should consider whether the former client was given notice. Stea is a nonlawyer, and the law did not require the trial court to consider whether VLG gave the Yukevich firm notice that VLG had hired Stea. Finally, we note that *Kirk* says that physical, geographical, or departmental separation are simply factors for a trial court to consider. They are not mandatory requirements of an ethical screen. (*Kirk, supra*, 183 Cal.App.4th at p. 813.) Thus, the absence of such factors here does not establish either that the

15

evidence was insufficient to support the trial court's order or that it abused its discretion.

C. <u>Any Error as to the Test the Trial Court Applied was Harmless</u>.

The trial court erred when it applied the substantial relationship test. Because Stea was a nonlawyer, the trial court should have applied the materially related test from *Complex Asbestos*. Ultimately, however, Devora rebutted any presumption that Stea possessed confidential attorney-client information, and Shay established that VLG created an adequate screen. As a result, even absent the error, the trial court would not have disqualified VLG and Shay. We therefore conclude any error was harmless under *Watson*.

## DISPOSITION

The order is affirmed. Devora shall recover her costs on appeal.

<u>NOT TO BE PUBLISHED IN THE OFFICIAL REPORTS</u>.


_____, Acting P. J.
ASHMANN-GERST

We concur:


_____, J.
CHAVEZ


_____, J.
HOFFSTADT

16