Filed 1/26/18

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

FOURTH APPELLATE DISTRICT

DIVISION THREE

| | |
|---|---|
| CALIFORNIA SELF-INSURERS' SECURITY FUND et al., <br><br> Petitioners, <br><br> v. <br><br> THE SUPERIOR COURT OF ORANGE COUNTY, <br><br> Respondent; <br><br> ACTIVCARE LIVING et al., <br><br> Real Parties in Interest. | G054981 <br><br> (Super. Ct. No. 30-2013-00690574) <br><br> O P I N I O N |

Original proceedings; petition for a writ of mandate to challenge an order of the Superior Court of Orange County, William D. Claster, Judge. Petition granted.

Arnold & Porter Kaye Scholer, Sean M. SeLegue, John S. Throckmorton and Matthew R. Diton; Nixon Peabody and Karl D. Belgum for Petitioners.

No appearance for Respondent.

Michelman & Robinson and Jeffrey D. Farrow for Real Parties in Interest, Activcare Living fka Health Care Group and Mountview Retirement Ltd., et al.

Epps & Coulson, Dawn M. Coulson and Veronica S. Darling for Real Party in Interest, Acacia Villas Assisted Living.

Roxborough, Pomerance, Nye & Adreani, Nicholas P. Roxborough, Jaclyn D. Grossman and Ryan R. Salsig for Real Parties in Interest, Braswell's Ivy Retreat et al.

Law Office of Shafiel A. Karim and Shafiel A. Karim for Real Party in Interest, Southview Home Care Services, Inc.

Thomas G. Gehring & Associates, A Professional Corporation, Thomas G. Gehring and Julia J. Park for Real Party in Interest, ELADH.

*          *          *

Petitioners California Self-Insurers' Security Fund (the Fund) and Nixon Peabody LLP (Nixon Peabody or the firm) seek a writ of mandate directing the trial court to vacate its order disqualifying Nixon Peabody from representing the Fund in the instant case. Petitioners argue the trial court mistakenly believed it was compelled by law to disqualify the firm; the court instead should have made further factual findings and exercised its discretion. Real parties in interest contend disqualification was mandatory and therefore no discretion needed to be exercised.

We conclude, for the reasons set forth below, that automatic disqualification was not required under these facts. We therefore grant the petition and direct the trial court to determine whether confidential information was transmitted to Nixon Peabody, or whether, in the court's discretion, other compelling reasons dictate the firm should be disqualified.

2

# I

## FACTS

The Fund is a nonprofit organization charged by the state Legislature with continuing payment of workers' compensation claims when a self-insured entity is unable to do so. (Lab. Code, § 3740.) When the Fund steps in to provide such payments, it is required by law to seek reimbursement from the employer. (Lab. Code, § 3744, subd. (a).) The instant action is a collection effort by the Fund.

The law permits groups of employers to band together into self-insurance groups, and the Fund is also responsible for paying workers' compensation claims when such groups cannot. The Healthcare Industry Self-Insurance Program (the Program) is one such group. In 2013, the California Department of Industrial Relations ordered the Fund to assume the Program's workers' compensation claims.

The Fund hired Nixon Peabody to represent it in order to seek reimbursement. In November 2013, the Fund filed a lawsuit naming 304 members of the Program as defendants, approximately 170 of which have since settled. The remaining defendants are real parties in interest (real parties) in this proceeding.

Two real parties are of particular note here. Activcare Health Care Group and Mountainview Retirement, Ltd., et al. (the moving parties) are represented by Michelman & Robinson, LLP (M&R). According to a declaration filed by M&R attorney Jeffrey D. Farrow, from approximately 2009 until February 1, 2017, attorney Andrew Selesnick served as Chair of the Health Care Department at M&R, overseeing and managing a team of attorneys who represented clients in the healthcare industry. Since 2014, M&R served as attorneys for moving parties, as well as four other defendants in this matter. The representation of those parties was handled primarily by four attorneys at M&R, including Selesnick. According to Farrow, Selesnick was actively involved in the case, including participation in a confidential discussion pertaining to moving parties' liability and damages. After real parties began working together on a

3

common defense, in February 2014, Selesnick was copied on many e-mails containing communications about that defense.

On or about February 1, 2017, Selesnick left M&R and joined Nixon Peabody. Nixon Peabody was promptly advised of the potential conflict issue by M&R. On or about March 8, Selesnick "part[ed] ways" with Nixon Peabody.

On March 15, moving parties filed a motion to disqualify Nixon Peabody. Numerous other real parties subsequently filed joinders in the motion.[1] They argued that Selesnick had done prior work for the moving parties in the same action, and as a result, Nixon Peabody and all its attorneys had a conflict of interest as a matter of law. They further argued Selesnick had received confidential information about the moving parties while at M&R. Nixon Peabody and the Fund responded that the firm should not be disqualified because Selesnick had left the firm, and no current Nixon Peabody attorney had received confidential information from him. Further, the Fund would be prejudiced if the firm were disqualified.

Nixon Peabody hired attorney Sean M. SeLegue to review this issue. According to SeLegue, Selesnick had represented four defendants as part of the team at M&R's Los Angeles office, while Farrow represented the moving parties from the Orange County office. The parties Selesnick was actively involved with, according to him, were among those who settled before Selesnick left M&R. Selesnick did not, consequently, believe he had confidential information regarding the moving parties. He also told SeLegue he had not been involved in the case to a "significant extent," as another attorney had taken the lead. Selesnick had been hired to work in Nixon Peabody's Los Angeles office, while the firm's team working on this matter worked in the San Francisco office. Every member of that team submitted a declaration stating that

---

[1] The basis for these parties joining in the motion was that Selesnick had been exposed to confidential joint defense information.

Selesnick had not shared confidential information with them, and the firm had put an "ethical wall" in place.

In reply, the moving parties noted that Selesnick himself had not submitted a declaration in opposition to the motion. They further argued that the ethical wall had not been put in place before Selesnick began working at the firm, but only after the moving parties and other real parties objected to the conflict.

The trial court granted the motion, concluding that Selesnick had previously personally represented the two moving parties as well as four defendants who settled. It concluded that when an attorney switches sides, disqualification is mandatory; no amount of ethical screening can save the representation.

The Fund and Nixon Peabody filed the instant petition for a writ of mandate and a stay of trial court proceedings on May 19, 2017. We granted the stay and requested preliminary opposition. After receiving briefing, including joinders from additional real parties and opposition briefs from several of them, we issued an order to show cause as to why relief should not be granted.

II

DISCUSSION

"'"'The relation between attorney and client is a fiduciary relation of the very highest character, and binds the attorney to most conscientious fidelity—*uberrima fides*." [Citations.] Among other things, the fiduciary relationship requires that the attorney respect his or her client's confidences. [Citations.] It also means that the attorney has a duty of loyalty to his or her clients. [Citations.]' [Citation.]" (*Cal Pak Delivery, Inc. v. United Parcel Services, Inc.* (1997) 52 Cal.App.4th 1, 11.)

"Generally, a trial court's decision on a disqualification motion is reviewed for abuse of discretion. [Citations.] If the trial court resolved disputed factual issues, the reviewing court should not substitute its judgment for the trial court's express or implied

5

findings supported by substantial evidence.  [Citations.]  . . . However, the trial court's discretion is limited by the applicable legal principles.  [Citation.]  Thus, where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law.  [Citation.]  In any event, a disqualification motion involves concerns that justify careful review of the trial court's exercise of discretion.  [Citation.]"  (*People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143-1144 (*SpeeDee Oil*).)  In the instant case, it appears from the court's order that it believed disqualification was mandatory and automatic.  Therefore, the court did not truly exercise its discretion.  Our review is de novo to determine whether the court's determination was correct as a matter of law, or whether an exercise of discretion is necessary here.

A motion to disqualify a party's counsel raises several important interests.  (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1144.)  Thus, "judges must examine these motions carefully to ensure that literalism does not deny the parties substantial justice."  (*Ibid*.)  Depending on the circumstances, "a disqualification motion may involve such considerations as a client's right to chosen counsel, an attorney's interest in representing a client, the financial burden on a client to replace disqualified counsel, and the possibility that tactical abuse underlies the disqualification motion.  [Citations.]"  (*Id.* at p. 1145, fn. omitted.)  However, "determining whether a conflict of interest requires disqualification involves more than just the interests of the parties."  (*Ibid.*)  "The paramount concern must be to preserve public trust in the scrupulous administration of justice and the integrity of the bar."  (*Ibid.*)

"A trial court's authority to disqualify an attorney derives from the power inherent in every court '[t]o control in furtherance of justice, the conduct of its ministerial officers, and of all other persons in any manner connected with a judicial proceeding before it, in every matter pertaining thereto.'  [Citations.]"  (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1145.)

6

Where an attorney's potentially conflicting representations are simultaneous, "[t]he primary value at stake . . . is the attorney's duty—and the client's legitimate expectation—of loyalty . . . ." (*Flatt v. Superior Court* (1994) 9 Cal.4th 275, 284 (*Flatt*).)  In such cases, the rule of disqualification is a "*per se* or 'automatic' one." (*Ibid*.)

This also applies to a law firm where an attorney is currently working.  "It is now firmly established that where the attorney is disqualified from representation due to an ethical conflict, the disqualification extends to the entire firm [citations] at least where an effective ethical screen has not been established [citation]." (*Adams v. Aerojet–General Corp.* (2001) 86 Cal.App.4th 1324, 1333 (*Adams*); *Farris v. Fireman's Fund Ins. Co.* (2004) 119 Cal.App.4th 671, 689, fn. 17 (*Farris*).)  "As a general rule in California, where an attorney is disqualified from representation, the entire law firm is vicariously disqualified as well.  [Citations.]  This is especially true where the attorney's disqualification is due to his prior representation of the opposing side during the same lawsuit." (*Henriksen v. Great American Savings & Loan* (1992) 11 Cal.App.4th 109, 114-115 (*Henriksen*).)

Thus, there is no question that if Selesnick were seeking to represent the Fund, he could not do so.  There is also no question that if Selesnick continued to work at Nixon Peabody, the entire firm would be disqualified.  The question that is left to us is whether Nixon Peabody and all its attorneys are also prohibited from representing the Fund given all the relevant facts, including that Selesnick no longer works at Nixon Peabody, and was only there for a very brief period.

The moving and real parties argue, and the trial court agreed, that disqualification in such a situation is automatic under the bright-line rule set forth in *Henriksen*.  In that case, borrowers sued a lender for lender liability, and the lender filed a cross-complaint seeking foreclosure.  The lender's initial law firm, Hoge, Fenton, Jones and Appel (Hoge) employed an associate named Peter Brock. (*Henriksen*, *supra*, 11

7

Cal.App.4th pp. 111-112.)  Brock spent more than 200 hours on the case.  Some other events ensued, but as relevant here, sometime later, Brock joined the borrrowers' law firm, Bartko, Welsh, Tarrant & Miller (Bartko).  The lender moved to disqualify Bartko based on Brock's conflict.  Bartko argued that it had put procedures in place to isolate Brock from the litigation, but ultimately, the court granted the motion to disqualify.  (*Id.* at pp. 112-113.)  The *Henriksen* court followed *Dill v. Superior Court* (1984) 158 Cal.App.3d 301, a case with almost identical facts.  The court noted that an ethical wall was insufficient:  "[T]he ethical wall concept has not found judicial acceptance in California on our facts:  a nongovernmental attorney armed with confidential information who switches sides during the pendency of litigation." (*Henriksen*, *supra*, 11 Cal.App.4th p. 115.)  Disqualification of the entire firm under such circumstances, the court held, was automatic and required.  (*Id.* at pp. 114-115.)

Petitioners contend disqualification is not automatic when the attorney in question has left the firm before the motion to disqualify is decided.  They rely heavily on *Kirk v. First American Title Ins. Co.* (2010) 183 Cal.App.4th 776 (*Kirk*).  We analyze this case in depth not because the petitioners cite it in their favor, but because it provides a lengthy analysis of the current state of California law on this issue.

That case involved a series of class action lawsuits against First American, a title insurer, and related entities.  First American was represented by three attorneys at Bryan Cave LLP.  (*Kirk*, *supra*, 183 Cal.App.4th at p. 785.)  At one point during the case, plaintiffs' counsel spoke to Gary Cohen, then chief counsel for Fireman's Fund Insurance Company, to discuss possible retention of Cohen's services as a consultant.  It was undisputed that counsel conveyed confidential information to Cohen.  Cohen was interested, but it came to light that Fireman's Fund had, possibly, provided insurance coverage to one or more of the defendants.  (*Id*. at pp. 786-787.)

Approximately a year later, Cohen moved to a firm, Sonnenschein Nath & Rosenthal LLP (Sonnenschein).  Plaintiffs contacted Cohen, who would no longer have a

8

conflict due to his role at Fireman's Fund, about consulting on the case. Cohen said he would check conflicts at Sonnenschein and get back to them. Before he did so, plaintiffs sent Cohen edited versions of the complaint, "reducing them to what plaintiffs' counsel believed to be the main issues." (*Kirk*, *supra*, 183 Cal.App.4th at pp. 786-787.) Shortly thereafter, Cohen replied: "'It turns out that the firm does represent First American, so I'm afraid that I won't be able to be of any help. I haven't read the attachments to your email and will delete them without having read them.' There was no further contact between Cohen and . . . counsel." (*Ibid.*)

Shortly thereafter, the attorneys from Bryan Cave representing First American moved to disqualify Sonnenschein. Plaintiffs objected to Sonnenschein's representation, given Cohen's prior contact with counsel. Until that point, Sonnenschein had been unaware of Cohen's involvement. (*Kirk*, *supra*, 183 Cal.App.4th at p. 787.) The firm "established an ethical screen around Cohen." (*Id.* at p. 788.)[2]

The plaintiffs moved to disqualify Sonnenschein, and the trial court granted the motion. (*Kirk*, *supra*, 183 Cal.App.4th at pp. 789-791.) The trial court said nobody was to blame except the "'itinerant nature of attorneys.'" (*Id.* at p. 790.) The trial court found, however, that confidential information had been disclosed to Cohen during the initial phone call with plaintiff's counsel. As relevant here, the court also "concluded that, when an attorney possesses disqualifying confidential client information, vicarious disqualification of the law firm is *automatic*, regardless of any ethical screening wall created." (*Ibid.*)

The Court of Appeal disagreed. Reviewing the history of vicarious qualification, the court noted that in *Flatt*, *supra*, 9 Cal.4th 275, "the Supreme Court distinguished the duty of *loyalty*, which was at issue in that case, from the duty of client

_____

[2] Cohen was also briefly involved (3.5 billable hours) with another First American matter, separate from but with issues related to, the class actions. (*Kirk*, *supra*, 183 Cal.App.4th at pp. 788-789.)

*confidentiality*, which is at issue in cases of vicarious disqualification. To properly understand *Flatt* in context, however, it is necessary to briefly discuss the 'substantial relationship' test. When it is alleged by a former client that its former attorney possesses material confidential information and is therefore disqualified from representing an adversary in *another* case, it is difficult for the former client to establish, as a factual matter, 'what is in the mind of the attorney.' [Citation.] The courts have therefore established a test, under which, if the former client can demonstrate a substantial relationship between the subjects of the former and the current representations, it is presumed that the attorney had access to confidential information in the first representation which is relevant to the second representation." (*Kirk*, *supra*, 183 Cal.App.4th at p. 796.)

"In discussing the substantial relationship test in *Flatt*, the Supreme Court stated that once the test is met, 'disqualification of the attorney's representation of the second client is mandatory; indeed, the disqualification extends vicariously to the entire firm.' [Citation.] The Supreme Court cited *Henriksen* for the proposition that vicarious disqualification is compelled as a matter of law. [Citation.] The *Flatt* case, however, was not concerned with whether a tainted attorney's law firm was subject to vicarious disqualification." (*Kirk*, *supra*, 183 Cal.App.4th at p. 797.)

"In the context of *Flatt*, the Supreme Court's citation of *Henriksen* with approval and statement of a rule of automatic vicarious disqualification should not be read as a binding adoption of a rule of automatic vicarious disqualification *in all circumstances*, as the issue was not then before the Supreme Court." (*Kirk*, *supra*, 183 Cal.App.4th at p. 797.) The court noted that language in *SpeeDee Oil*, *supra*, 20 Cal.4th 1135, left open the question of whether vicarious disqualification was automatic. "In any event, we need not consider whether an attorney can rebut a presumption of shared confidences, and avoid disqualification, by establishing that the firm imposed effective screening procedures." (*Id.* at p. 1151.) "The Supreme Court found it unnecessary to

10

reach this issue in *SpeeDee Oil* because the court concluded that the firm failed to demonstrate an effective screening process had been established.  Nonetheless, the Supreme Court's language suggests that it believed that the question of whether an effective screening wall may rebut the presumption of vicarious disqualification was a question it had not yet resolved."  (*Kirk*, *supra*, 183 Cal.App.4th at p. 798.)

The court then noted that case law since *SpeeDee* had been mixed.  Some courts had stated vicarious disqualification applies in the absence of a sufficient ethical screen.  (*Farris*, *supra*, 119 Cal.App.4th at p. 689, fn. 17; *Adams*, *supra*, 86 Cal.App.4th at p. 1333.)  Other courts had continued to state the rule of vicarious disqualification is absolute.  (*City of Santa Barbara v. Superior Court* (2004) 122 Cal.App.4th 17, 23-24;[3] *Frazier v. Superior Court* (2002) 97 Cal.App.4th 23, 30.)[4]  The Supreme Court had since held, in the context of disqualifying a City Attorney's office when the City Attorney had a conflict, that:  "Normally, an attorney's conflict is imputed to the law firm as a whole on the rationale 'that attorneys, working together and practicing law in a professional association, share each other's, and their clients', confidential information.'  [Citation.]"  (*City and County of San Francisco v. Cobra Solutions, Inc.* (2006) 38 Cal.4th 839, 847-848.)  As the *Kirk* court noted:  "This language prompted a dissent by Justice Corrigan, joined by Chief Justice George, stating that the automatic disqualification rule 'is being questioned even in the private practice context,' due to increases in attorney mobility and firm mergers.  [Citation.]"  (*Kirk*, *supra*, 183 Cal.App.4th at p. 799.)

After *City and County of San Francisco v. Cobra Solutions, Inc.*, *supra*, 38 Cal.4th at page 839, *Meza v. H. Muehlstein & Co., Inc.* (2009) 176 Cal.App.4th 969, had also discussed the issue.  "Relying on *Henriksen*, *Flatt*, and the Supreme Court's

---

[3] This was a city attorney case that stated the automatic disqualification rule without further analysis, and held vicarious qualification of the office was not required.

[4] This case involved *Cumis* counsel, and this court held that disqualification was not required.

11

rationale for vicarious disqualification in *SpeeDee Oil*, we concluded that 'an "ethical wall" between an attorney with confidential information and his or her firm will generally not preclude the disqualification of the firm. [Citation.] Instead, there is a presumption that each member of the firm has imputed knowledge of the confidential information.' [Citation.] Although we stated that an ethical wall will *generally* not preclude disqualification, we did not address in what circumstances an ethical wall *may* preclude disqualification, or whether the presumption can ever be rebutted." (*Kirk*, *supra*, 183 Cal.App.4th at p. 799.)

The court continued: "In very brief summary, the history of the law of vicarious disqualification appears to be as follows: (1) appellate courts initially concluded vicarious disqualification was not automatic, but instead subject to a balancing test; (2) *Henriksen* concluded the burden of rebutting the presumption of imputed knowledge simply could not be satisfied in the case of a tainted attorney who represented one party and switched sides in the same case; (3) the Supreme Court favorably cited *Henriksen* and appeared to state a rule of automatic vicarious disqualification any time material confidential information was presumed to be held by the tainted attorney (*Flatt*); (4) the Supreme Court subsequently suggested that whether vicarious disqualification can be avoided by a proper ethical wall was still an open question (*SpeeDee Oil*); and (5) the Supreme Court has never directly addressed the issue on the merits.

"Given this history, we conclude that it is improper to rely on *Flatt* as creating an absolute rule of vicarious disqualification in California. Instead, we believe that neither *Flatt* nor *SpeeDee Oil* addressed the issue of whether vicarious disqualification is absolute, and the state of the law is that as initially expressed by the appellate courts: (1) a case-by-case analysis based on the circumstances present in, and policy interests implicated by, the case; (2) tempered by the *Henriksen* rule that vicarious disqualification should be automatic in cases of a tainted attorney possessing actual confidential information from a representation, who switches sides in the same case.

12

"We do not doubt that vicarious disqualification is the *general* rule, and that we should presume knowledge is imputed to all members of a tainted attorney's law firm. However, we conclude that, in the proper circumstances, the presumption is a rebuttable one, which can be refuted by evidence that ethical screening will effectively prevent the sharing of confidences in a particular case." (*Kirk*, *supra*, 183 Cal.App.4th at pp. 800-801, fn. omitted.)

Taking the unusual step of accepting additional evidence on appeal, the *Kirk* court also noted that Cohen, having been at Sonnenschein for approximately one year, had since departed. (*Kirk*, *supra*, 183 Cal.App.4th at pp. 815-816.) "[O]nce the tainted attorney has left the firm, vicarious disqualification is not necessary 'where the evidence establishes that no one other than the departed attorney had any dealings with the client or obtained confidential information.'" (*Id.* at p. 815.)

The court ultimately reversed and remanded, directing the trial court to "determine whether Cohen's activities at the firm actually resulted in the improper transmission, directly or indirectly, of confidential information from Cohen to the First American team, or any other member of the Sonnenschein firm who may have worked on the related class actions. If (1) the Sonnenschein firm can overcome the rebuttable presumption that confidential information was transmitted, by offering sufficient evidence that confidential information was not, in fact, transmitted and (2) the trial court, in the exercise of its discretion, concludes that the implicated policy considerations favor allowing Sonnenschein to remain as counsel, the trial court should deny the motion for disqualification. If, however, the trial court concludes that (1) Sonnenschein has not sufficiently rebutted the presumption that confidential information was transmitted, or (2) despite a finding that confidential information was not transmitted, the competing policy considerations nonetheless mandate disqualification of the entire firm under the circumstances, the trial court should grant the motion for disqualification. We express no

13

opinion on the resolution of any of these questions, which are for the trial court to determine in the first instance." (*Kirk*, *supra*, 183 Cal.App.4th at p. 816.)

We agree with the court in *Kirk* that whether disqualification of the entire firm is automatic is an open question. As *Kirk* noted, other recent cases have suggested it is not. (*Farris*, *supra*, 119 Cal.App.4th at p. 689, fn. 17; *Adams*, *supra*, 86 Cal.App.4th at p. 1333.) Our role here, of course, is only to decide the case before us, which has factual circumstances unlike any of the published cases we have found. Real parties distinguish *Kirk* by noting that unlike Cohen, Selesnick actively represented one of the parties in the dispute at his old firm. While that is true, we do not believe it requires automatic disqualification in this case. The *Kirk* rule not only sets forth an argument that better serves the purposes of disqualification – to protect clients on both sides – but it also avoids the harshness of implying an automatic rule that may not be necessary or appropriate under these facts.

Instead, we conclude the trial court must perform an analysis regarding whether confidential information was, indeed, transmitted from Selesnick to the attorneys working on the matter at Nixon Peabody. This is not an issue of loyalty – it is undisputed that none of Nixon Peabody's current attorneys representing the Fund owe a duty of loyalty to moving parties or the other real parties. The question, then, is whether Selesnick's tenure at the firm endangers the duty of confidentiality[5] he owes to real parties; if it does, disqualification is required. If it does not, then the court must exercise its discretion to determine whether other reasons compel disqualification.

---

[5] See California Rules of Professional Responsibility, rule 3-310(E): An attorney "shall not, without the informed written consent of the client or former client, accept employment adverse to the client or former client where, by reason of the representation of the client or former client, the member has obtained confidential information material to the employment."

14

Our reasons for this are numerous. Of particular significance is that the facts in this case are significantly different from the typical "switching sides" scenario. In *Henriksen* and *Dill*, for example, the attorneys in question were still employed by their new firms at the time the court ruled on the disqualification motions, Selesnick was employed by Nixon Peabody for an incredibly brief period, approximately five weeks. He worked in a different office at the firm from the attorneys who were actively involved in the instant matter. The firm took steps to isolate Selesnick from the case, and there was evidence before the court that no confidential information was shared. Further, at this stage of the case, the Fund would be substantially prejudiced if it had to hire new counsel and bring them up to speed.

Individual assessment of the facts, rather than automatic disqualification, is a modern rule that better reflects the current realities of law firm life in the 21st century. "Disqualification based on a conclusive presumption of imputed knowledge derived from a lawyer's past association with a law firm is out of touch with the present day practice of law. Gone are the days when attorneys (like star athletes) typically stay with one organization throughout their entire careers. . . . We have seen the dawn of the era of the 'mega-firm.' Large law firms (like banks) are becoming ever larger, opening branch offices nationwide or internationally, and merging with other large firms. Individual attorneys today can work for a law firm and not even know, let alone have contact with, members of the same firm working in a different department of the same firm across the hall or a different branch across the globe." (*Adams*, *supra*, 86 Cal.App.4th at p. 1336.) This, of course, is relevant here because Selesnick and the attorneys working on the matter operated out of different offices. The "water cooler chat" rationale for automatic disqualification is therefore not a concern in this instance.

Further, the rationale behind automatic disqualification is substantially diminished when the attorney in question no longer works at the firm sought to be

15

disqualified. *Goldberg v. Warner/Chappell Music, Inc.* (2005) 125 Cal.App.4th 752, was an employment discrimination case. The plaintiff sought to disqualify defense counsel because the plaintiff had consulted with a partner at the firm six years earlier. That partner had left the firm before the litigation began. (*Id.* at pp. 754-755.) The trial court denied the motion, and the Court of Appeal agreed, finding no evidence that confidential information had or was likely to be communicated. (*Id.* at p. 758.) While the facts are different here, the same principle applies: automatic disqualification is not required, but is a presumption subject to rebuttal. Automatically finding that Selesnick's very short tenure at Nixon Peabody is sufficient to impute knowledge to the entire firm, including attorneys working on the matter in a different office, places form over substance.

Disqualification is neither intended to be punitive nor formalistic. "The purpose of a disqualification order is prophylactic, not punitive. [Citation.]" (*Kirk*, *supra*, 183 Cal.App.4th at p. 815.) "Disqualification is inappropriate, however, simply to punish a dereliction that will likely have no substantial continuing effect on future judicial proceedings. [Citation.]" (*Gregori v. Bank of America* (1989) 207 Cal.App.3d 291, 309.) Nor should "literalism . . . deny the parties substantial justice." (*SpeeDee Oil*, *supra*, 20 Cal.4th at p. 1144.) Disqualification, because it implicates such important interests, should be carefully considered. Given the facts of this case, we therefore conclude it is appropriate for the trial court to engage in the factual analysis discussed in *Kirk* before exercising its discretion to determine if disqualification is necessary.

III

DISPOSITION

The petition is granted. The order to show cause is discharged, and the stay is dissolved. Let a peremptory writ of mandate issue directing the superior court to vacate its order disqualifying the firm, and to consider all relevant facts and

16

circumstances, as set forth in this opinion, in determining whether the motion to disqualify should be granted.  Petitioners shall recover their costs.


MOORE, J.

WE CONCUR:


O'LEARY, P. J.


IKOLA, J.