Filed 8/22/23

**CERTIFIED FOR PUBLICATION**

IN THE COURT OF APPEAL OF THE STATE OF CALIFORNIA

SECOND APPELLATE DISTRICT

DIVISION SEVEN

| | |
|---|---|
| ROBERT GERINGER et al., | B316718 |
| Cross-complainants and Respondents. | (Los Angeles County Super. Ct. No. SC121803) |
| v. | |
| BLUE RIDER FINANCE, | |
| Cross-defendant and Appellant. | |

APPEAL from an order of the Superior Court of Los Angeles County, Mark A. Young, Judge.  Reversed.

Law Offices of Jeffrey S. Konvitz and Jeffrey Konvitz for Cross-defendant and Appellant.

Law Offices of Richard A. Kober, Richard A. Kolber; and Jeffrey A. Greene for Cross-complainants and Respondents Geringer Capital, Inc., Robert Geringer and Tricycle Entertainment.

_____

Geringer Capital, Inc., Roger Geringer and Tricycle Entertainment, LLC (collectively Geringer parties) moved to preclude Jeffrey Konvitz, Blue Rider Finance, Inc.'s counsel of record, from testifying at trial in support of Blue Rider's claim that the Geringer parties fraudulently induced Blue Rider to enter into a settlement agreement that did not accurately reflect the terms negotiated by the parties.  The Geringer parties subsequently clarified that their motion should be considered, in the alternative, a motion to disqualify Konvitz.  Although Blue Rider had provided its informed written consent to Konvitz's acting as both its key witness and trial counsel, the court granted the motion and disqualified Konvitz, finding the integrity of the judicial process would be impaired if Konvitz served in dual roles. On appeal Blue Rider contends the court should have denied the motion due to the Geringer parties' excessive delay in raising the issue (an implied waiver) and the order precluding Konvitz from representing it at trial was not supported by any evidence of prejudice to the Geringer parties or detriment to the judicial process.  We agree and reverse.

## FACTUAL AND PROCEDURAL BACKGROUND

1. *The Bridge Loan, the Settlement Agreement and Blue Rider's Fifth Amended Cross-complaint*

The background of the Geringer-Blue Rider dispute was detailed in this court's opinion in *Geringer Capital, Inc. v. Blue Rider Finance, Inc.* (Dec. 20, 2017, B269378) [nonpub. opn.] (*Geringer I*)).  In brief, in August 2006 Blue Rider made a $4.2 million bridge loan, personally guaranteed by Geringer, the principal of Geringer Capital, and his colleague Craig Baumgarten, to several production companies to fund preproduction of a motion picture.  After the production

2

companies defaulted on the bridge loan and Blue Rider sought to enforce the personal guarantees, Geringer and Baumgarten proposed that Geringer Capital purchase the loan from Blue Rider for $1.3 million, with $300,000 to be paid on signing and $1 million paid within 120 days thereafter. In early 2009, after months of negotiations, the Geringer parties delivered a series of payments totaling $300,000 to Blue Rider in anticipation of Blue Rider's acceptance of the terms of a purchase loan agreement.

When the deal fell through, Blue Rider informed Geringer Capital it was retaining the money as partial payment of the outstanding debt owed by Geringer and related parties as guarantors. Blue Rider then sued Geringer and Baumgarten to enforce their personal guarantees. That lawsuit was resolved with a settlement agreement executed in December 2010.

In December 2013 Geringer Capital sued Blue Rider seeking return of the $300,000 paid in 2009, more than four years earlier. Blue Rider answered the complaint and filed a cross-complaint against the Geringer parties, alleging causes of action for fraud, reformation based on unilateral mistake and declaratory relief, arising from the parties' dispute concerning the scope of the release in the 2010 settlement agreement. The Geringer parties asserted the 2010 settlement agreement encompassed not only the personal guaranty obligations but also all remaining bridge loan obligations. Blue Rider insisted the settlement agreement was limited to the guaranty obligations, but alleged, if not, Geringer and his affiliated companies had defrauded Blue Rider into signing a document that did not accurately reflect Blue Rider's expressed intentions.

In June 2015 Blue Rider moved for summary judgment on Geringer Capital's complaint on the ground all causes of action

3

were barred by the applicable statutes of limitation. The trial court granted the motion. The court also sustained without leave to amend the Geringer parties' demurrer to what was then Blue Rider's second amended cross-complaint. On appeal this court affirmed the order granting summary judgment in favor of Blue Rider on Geringer Capital's complaint and reversed the order sustaining the demurrer to Blue Rider's cross-complaint without leave to amend and directed the trial court to allow Blue Rider to amend the second amended cross-complaint to allege, if it could in good faith, facts supporting a damage remedy (which it had said was its desired remedy) and justifying its delay in seeking rescission. (*Geringer I*, *supra*, B269378.)

After two more rounds of demurrers, on November 16, 2018 Blue Rider filed the operative fifth amended cross-complaint, naming as cross-defendants Geringer, Geringer Capital and Tricycle Entertainment, a limited liability company controlled by Geringer that had been named as a Doe defendant in the original cross-complaint.[1] Blue Rider asserted causes of action for fraud against Geringer, civil conspiracy against Geringer, Geringer Capital and Tricycle Entertainment (that is, that Geringer and the two entities conspired to commit the fraud effected by Geringer), unilateral mistake and declaratory relief. The pleading alleged that Geringer had fraudulently induced Blue Rider to sign the 2010 settlement agreement, which contained terms that the parties had not agreed to include, and that Blue Rider made a unilateral mistake when it signed the settlement agreement without noticing the improperly inserted provisions.

---

[1]     Baumgarten had been named in the original cross-complaint but not in any of its subsequent iterations.

4

Following additional pleading practice, the Geringer parties filed an answer, and the case was at issue.

2. *The Motion To Preclude Konvitz from Testifying at Trial*

At a case management conference in September 2020 the court set a September 27, 2021 trial date. On August 19, 2021 Blue Rider filed a notice of association of counsel and a notice (with an attached declaration from Walter Josten, the senior officer of Blue Rider) of Blue Rider's consent to Konvitz acting as its counsel in the case notwithstanding his role as a key witness.[2] According to a declaration by Richard A. Kolber, counsel for the Geringer parties, the prior day Konvitz had emailed him to say that a new lawyer was associating into the case "'as I cannot ask myself questions as a witness.'"

On August 24, 2021 the Geringer parties filed an ex parte application to preclude Konvitz from testifying at trial or for an order shortening time for a noticed hearing on the matter. In its memorandum in support of the application, the Geringer parties

---

[2] In his declaration, after explaining that Konvitz had represented Blue Rider since the inception of the litigation, which was more than 16 years old and involved thousands of pages of documents, Josten stated, "Mr. Konvitz gave us the option of seeking independent counsel to try the case advising us of relevant sections of the Rules of Professional [C]onduct. However, [Blue Rider,] which is basically insolvent and whose only asset is its interest in the Picture, did not and does not have the wherewithal to retain fully independent counsel or to do so now and it would have taken independent counsel many months, if not longer, to get up to speed even if [Blue Rider] could have afforded one. [¶] . . . We have asked Mr. Konvitz to act as our counsel in this case notwithstanding his role as a key witness and [Blue Rider] has given its informed written consent thereto."

5

argued Konvitz's testimony would violate rule 3.7 of the California Rules of Professional Conduct (Rule 3.7), explaining that the comments to that rule stated, notwithstanding the client's informed written consent, courts retained discretion to take action to protect the trier of fact from being misled or the opposing party from being prejudiced by a lawyer seeking both to testify and to serve as an advocate.  The application attached as exhibits Blue Rider's consent to Konvitz acting as trial counsel and witness; Blue Rider's notice of association of new counsel; and Kolber's declaration, which attached excerpts from Konvitz's August 2015 deposition and stated, "[Blue Rider's] action seeks to rescind a 2010 Settlement Agreement on the grounds that it was fraudulently induced to enter into the agreement.  Konvitz testified at deposition to his belief that he was duped by Cross-Defendants and their attorney, who Konvitz claims substituted terms into the agreement that caused [Blue Rider] to release financial obligations they did not intend to release."

In its opposition to the ex parte application Blue Rider argued the Geringer parties had known Konvitz would provide testimony and try the case for eight years prior to filing their motion.  He explained he had been a witness and trial counsel in the lawsuit to enforce Baumgarten's and Geringer's personal guarantees, which led to the disputed settlement agreement, and noted a case management conference statement filed in March 2014 stated that Konvitz would try the pending action.  The opposition also suggested that, rather than precluding Konvitz from testifying, if the court determined Konvitz should not serve as both witness and trial counsel, then the matter should be continued to allow Blue Rider to obtain new representation.  Blue

6

Rider also urged the court to set the matter for a hearing, rather than decide it based on ex parte papers.

Although observing that the Geringer parties' motion "could and should have been filed months if not years ago," the court on August 26, 2021 granted the alternative request to shorten time to hear the matter after full briefing. The court set the hearing for September 20, 2021, the date of the final status conference. The Geringer parties' ex parte application was accepted by the court as its moving papers.

On September 3, 2021 the parties stipulated to waive a jury, agreeing the case would proceed as a court trial. On the same day Blue Rider filed its opposition to the motion, including a declaration from Konvitz explaining in detail (with supporting exhibits) that the Geringer parties had known for years he was a key witness to the negotiation of the 2010 settlement agreement and also was Blue Rider's trial counsel in the matter (including his designation as such in a case management conference statement filed in January 2018 after this court's decision in *Geringer I* returned the cross-complaint to the trial court and another filed in September 2020 prior to the conference at which the court set the September 27, 2021 trial date).

In their reply memorandum, although continuing to refer to the motion as one to preclude Konvitz from testifying, the Geringer parties argued Konvitz needed to elect between being Blue Rider's star witness or its counsel. Konvitz's intention to blend the roles of advocate and witness, they contended, quoting from *Kennedy v. Eldringe* (2011) 201 Cal.App.4th 1197, 1210, "'robs the trial of that appearance of fairness which should characterize every court hearing.'" They also argued that they intended to present evidence that Konvitz committed malpractice

7

when negotiating and reviewing the terms of the settlement agreement and that they would be prejudiced in attacking Konvitz's credibility if he were not only a witness but also trial counsel.  Finally, although conceding they had long understood Konvitz was Blue Rider's counsel during the litigation and also its central witness, they argued they were not required to anticipate—and thus did not waive the right to challenge— Konvitz's intention to violate Rule 3.7 by acting as counsel at trial while also testifying on disputed issues on behalf of Blue Rider.[3]

>    3. *The Trial Court's Ruling Disqualifying Konvitz*

The trial court, noting that the Geringer parties had clarified in their reply papers that disqualification would be appropriate if Blue Rider insisted on having Konvitz testify, granted the motion and disqualified Konvitz as counsel for Blue Rider.  Evaluating the factors identified in case law to be considered when ruling on a motion to disqualify counsel who intends to appear as a witness at trial, the court first confirmed that Konvitz's testimony was "needed and crucial."  The court then dismissed Blue Rider's contention the motion had been made by the Geringer parties for purely tactical reasons, reiterating that the motion could have been presented sooner, but concluding the motion was not untimely because Blue Rider did not explicitly state it would call Konvitz as a witness until Blue

---

[3]     Whether in an effort to mislead the trial court or simply to cast aspersions on Konvitz, the Geringer parties persistently referred in their papers in the trial court to Konvitz's violation of, or intent to violate, Rule 3.7 despite elsewhere acknowledging the rule expressly allowed an attorney to act as both advocate and witness with the client's informed written consent.

Rider filed and served on August 19, 2021 the notice of consent to Konvitz acting as its counsel in the case notwithstanding his role as a key witness.

The court agreed with the Geringer parties' position that permitting Konvitz to serve as advocate-witness would impair the integrity of the judicial process. Quoting the portion of *People v. Donaldson* (2001) 93 Cal.App.4th 916, 927-928 that had quoted from the former American Bar Association (ABA) Model Code of Professional Responsibility, the court noted that counsel opposing an advocate-witness "'may be handicapped in challenging the credibility of the lawyer" and additionally observed the "mental gymnastics that the advocate-witness would need to perform to keep the roles straight impermissibly risks error and confusion."

Finally, the court recognized that Blue Rider had a strong interest in being represented by counsel of its choice and found that Blue Rider would be prejudiced by Konvitz's disqualification. Yet while this factor, as well as the age of the case and the time necessary for new counsel to become prepared to try the matter, were of concern, the court determined it was not decisive, noting Konvitz and Blue Rider "should have themselves identified this issue earlier themselves, and taken appropriate action to comply with the rules of professional responsibility and California law." In a nunc pro tunc order filed the following day, the court added that the motion was also granted to prevent prejudice to Blue Rider.

The court continued the trial to April 4, 2022. After Blue Rider filed a timely notice of appeal,[4] the trial court approved the

---

[4] An order disqualifying counsel is appealable. (*Militello v. VFARM 1509* (2023) 89 Cal.App.5th 602, 612, fn. 6; *URS Corp. v.*

parties' stipulation to stay the trial pending the outcome of the appeal.

## DISCUSSION

1. *Standard of Review*

A trial court's decision to grant or deny a motion to disqualify counsel is generally reviewed for abuse of discretion. (*People v. Suff* (2014) 58 Cal.4th 1013, 1038; *In re Charlisse C.* (2008) 45 Cal.4th 145, 159; *People ex rel. Dept. of Corporations v. SpeeDee Oil Change Systems, Inc.* (1999) 20 Cal.4th 1135, 1143 (*SpeeDee Oil*).) "As to disputed factual issues, a reviewing court's role is simply to determine whether substantial evidence supports the trial court's findings of fact . . . . As to the trial court's conclusions of law, however, review is de novo; a disposition that rests on an error of law constitutes an abuse of discretion." (*Charlisse C.*, at p. 159; see *Haraguchi v. Superior Court* (2008) 43 Cal.4th 706, 711-712; *Lopez v. Lopez* (2022) 81 Cal.App.5th 412, 422.) While the trial court's "'application of the law to the facts is reversible only if arbitrary and capricious'" (*Charlisse C.*, at p. 159), "where there are no material disputed factual issues, the appellate court reviews the trial court's determination as a question of law." (*SpeeDee Oil*, at p. 1144; accord, *Militello v. VFARM 1509* (2023) 89 Cal.App.5th 602, 612; *Wu v. O'Gara Coach Co., LLC* (2019) 38 Cal.App.5th 1069, 1079; *California Self-Insurers' Security Fund v. Superior Court* (2018) 19 Cal.App.5th 1065, 1071.)

---

*Atkinson/Walsh Joint Venture* (2017) 15 Cal.App.5th 872, 880; see *Meehan v. Hopps* (1955) 45 Cal.2d 213, 215-216.)

## 2. *Rule 3.7 and the Factors Affecting Disqualification*

Rule 3.7 provides, "A lawyer shall not act as an advocate in a trial in which the lawyer is likely to be a witness unless: [¶] (1) the lawyer's testimony relates to an uncontested issue or matter; [¶] (2) the lawyer's testimony relates to the nature and value of legal services rendered in the case; or [¶] (3) the lawyer has obtained informed written consent from the client." (Fn. omitted.)  Comment 3 to Rule 3.7, citing *Lyle v. Superior Court* (1981) 122 Cal.App.3d 470, clarifies that the informed-consent exception is not absolute:  "Notwithstanding a client's informed written consent, courts retain discretion to take action, up to and including disqualification of a lawyer who seeks to both testify and serve as an advocate, to protect the trier of fact from being misled or the opposing party from being prejudiced."

The court's discretion to disqualify a likely advocate-witness notwithstanding client consent—the exception to the exception—has been judicially interpreted to be permissible only upon "a convincing demonstration of detriment to the opponent or injury to the integrity of the judicial process."  (*Lyle v. Superior Court*, *supra*, 122 Cal.App.3d at p. 482; accord, *Lopez v. Lopez*, *supra*, 81 Cal.App.5th at p. 423; *Doe v. Yim* (2020) 55 Cal.App.5th 573, 582; *Smith, Smith & Kring v. Superior Court* (1997) 60 Cal.App.4th 573, 579.)  As explained in *Lyle*, the case cited to support the comment to Rule 3.7 at issue in this case, "[T]he trial court can disqualify counsel only where it is confronted with manifest interests which it must protect from palpable prejudice." (*Lyle*, at p. 482; see also *Maxwell v. Superior Court* (1982) 30 Cal.3d 606, 619, fn. 9 ["*the State Bar has concluded that a fully informed client's right to chosen counsel outweighs potential conflict or threat to trial integrity posed by counsel's appearance*

11

*as witness*"], disapproved on another ground in *People v. Doolin* (2009) 45 Cal.4th 390, 421, fn. 22.)

"In exercising its discretion to disqualify counsel under the advocate-witness rule, a court must consider: (1) ""whether counsel's testimony is, in fact, genuinely needed"""; (2) 'the possibility [opposing] counsel is using the motion to disqualify for purely tactical reasons'; and (3) 'the combined effects of the strong interest parties have in representation by counsel of their choice, and in avoiding the duplicate expense and time-consuming effort involved in replacing counsel already familiar with the case.' [Citation.] '[T]rial judges must indicate on the record they have considered the appropriate factors and make specific findings of fact when weighing the conflicting interests involved in recusal motions.'" (*Doe v. Yim supra*, 55 Cal.App.5th at pp. 583-584; accord, *Lopez v. Lopez, supra*, 81 Cal.App.5th at p. 424; cf. *SpeeDee Oil, supra*, 20 Cal.4th at pp. 1144-1145 [careful review of disqualification orders is mandated by concerns that may include "a client's right to chosen counsel" and "the financial burden on a client to replace disqualified counsel"].)

3. *The Trial Court Erred in Disqualifying Konvitz*

To reiterate, the general rule is that an attorney may serve as both advocate and witness, testifying at trial concerning disputed issues, if the client has provided its informed written consent. Disqualification of counsel when consent has been given must be based on a convincing showing of prejudice to the opposing party or the potential for palpable injury to the judicial process. Here, the record is devoid of the evidence necessary to support disqualification of Blue Rider's chosen counsel. To the contrary, the timing of the motion and the fact the Geringer parties initially sought to preclude Konvitz's testimony, not to

12

disqualify him, strongly suggest the motion was filed for purely tactical reasons.

### a. *Blue Rider's right to counsel of its choice*

As discussed, one side of the balance in determining a recusal motion is a client's right to be represented by counsel of its choice, as well as the financial burden created when disqualified counsel must be replaced. The trial court acknowledged these interests, finding Blue Rider would be prejudiced by Konvitz's disqualification. Indeed, as the declarations in opposition to the motion demonstrated, Konvitz represented Blue Rider in the litigation that led to the 2010 settlement agreement at issue in the current lawsuit and represented Blue Rider in this action even before he filed the cross-complaint on its behalf in October 2014, preparing Blue Rider's answer to Geringer Capital's 2013 lawsuit, indicating in an early (March 2014) case management conference statement that he would be Blue Rider's trial counsel,[5] and actively participating in discovery. That extensive involvement fully supports a finding not only of prejudice, but extreme prejudice if he were disqualified. (Cf. *Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.* (2011) 194 Cal.App.4th 839, 848 [prejudice if counsel were disqualified would be "extreme"; the lawyer not only knew his client as a result of having represented it for many years, but also gained mastery of this case as it was being developed; "[w]hile it is of course possible to learn a case by reviewing the file, it is not quite the same as having done it as [the lawyer] did it in this case"].)

---

[5] Although Blue Rider associated appellate counsel for *Geringer I, supra*, B269378, Konvitz was cocounsel for his client in that successful appeal.

After recognizing the prejudice to Blue Rider from disqualification, however, the trial court improperly discounted its significance with the comment that Blue Rider and Konvitz should have identified the issue earlier and "taken appropriate action to comply with rules of professional responsibility and California law." It is by no means clear what the trial court believed Blue Rider and Konvitz should have done, let alone why it was Blue Rider's responsibility—not the Geringer parties'—to have promptly addressed any concern about Konvitz's potential dual roles as advocate and witness. Unless and until the Geringer parties or the court raised an issue, as long as Konvitz had the informed written consent of the client, there was nothing under either the Rules of Professional Conduct or California law for Blue Rider or Konvitz to address. And, of course, no court action was necessary for Blue Rider to provide its informed written consent, which, under the circumstances here, it undoubtedly would have done at any time it was required.[6] Rather, it was up to the Geringer parties to assert, notwithstanding Konvitz's full compliance with Rule 3.7, that the trial court should nonetheless exercise its discretion to preclude his acting in both capacities.

b. *The Geringer parties' delay and possible motivation*

In addition to (improperly) faulting Blue Rider for not addressing the advocate-witness issue at an earlier date, the trial

---

[6] Although Blue Rider did not file its notice of permission for Konvitz to serve as both counsel and a principal witness at trial until a month before the scheduled trial date, nothing in the record indicates Konvitz had violated any ethical obligations prior to that time or that he and Blue Rider failed in any way to fully comply with California law.

14

court found, based on abundant evidence in the record, that it was readily apparent Konvitz would likely be a key witness at trial and the Geringer parties should have brought their motion "months if not years ago." Nonetheless, the trial court determined the motion was not untimely because it had been filed shortly after Blue Rider first served documents expressly stating it would call Konvitz as a witness.

That conclusion is, at best, questionable. (See *White v. Superior Court* (1979) 98 Cal.App.3d 51, 55-56 ["where other circumstances do not require a different result, a party who seeks to challenge the qualification of counsel to represent the adversary party must . . . proceed at the first reasonable opportunity by proper motion to achieve that end"]; see also *Liberty National Enterprises, L.P. v. Chicago Title Ins. Co.*, *supra*, 194 Cal.App.4th at pp. 844-845 ["[T]he majority view appears to be that attorney disqualification can be impliedly waived by failing to bring the motion in a timely manner. [Citation.] [¶] It appears that, at least in California, the delay has to be extreme or unreasonable before it operates as a waiver"].) But even if it were correct, the trial court erred in failing to adequately consider whether the extended delay in bringing the motion indicated, as Blue Rider argued, that the motion had been filed for purely tactical reasons. The true, tactical purpose of the motion was strongly suggested by the fact that the motion, presented long after Konvitz's central role in the negotiation and execution of the 2010 settlement agreement was well known to the Geringer parties, initially sought only to preclude Konvitz from testifying, not to disqualify him from serving as trial counsel. As our colleagues in Division Two of this court bluntly stated more than four decades ago in *White*, at page 55, the

15

advocate-witness rule was not intended "to permit an adversary litigant to corrode, prostitute and defeat the objective of the rule by what amounts to no more than trial tactics."

### c. *Prejudice to the Geringer parties*

The Geringer parties argued in the trial court and repeat on appeal that allowing Konvitz to act as both advocate and witness would somehow impair their ability to challenge the credibility of his testimony that they committed fraud in inducing Blue Rider to enter the 2010 settlement agreement and would give Konvitz the opportunity to change or add to his prior testimony while examining other witnesses or arguing the case. The first point is never explained. Indeed, the case they cited for this contention in the trial court, *Kennedy v. Eldridge, supra,* 201 Cal.App.4th 1197, noted a lawyer who is both counsel and witness is more easily impeachable for interest and may be a less effective witness. (*Id.* at p. 1209.)[7] The second ignores the ability of the trial judge to control counsel's questioning and argument, particularly in a bench trial, as will occur in this case. In any event, the trial court made no finding of prejudice to the Geringer parties, and "detriment to the opponent" was not a factor in its decision to disqualify Konvitz.

### d. *Injury to the judicial process*

In *Kennedy v. Eldridge, supra*, 201 Cal.App.4th 1197, a child custody and support case, the court of appeal affirmed the disqualification of the child's paternal grandfather from

---

[7] The potential prejudice to Blue Rider from Konvitz serving as both advocate and witness was an issue for Blue Rider, which, consistent with Rule 3.7, made an informed choice to authorize Konvitz to serve in both capacities, as discussed in the Josten declaration. (See footnote 2.)

16

representing his son, the child's father, against the child's mother because of the potential misuse by the grandfather-lawyer of confidential information concerning the mother obtained by his law firm during an earlier representation (*id.* at pp. 1206-1208) and, as an additional ground, because it was likely the grandfather would appear as a percipient witness in the dispute concerning the child's care and custody (*id.* at pp. 1208-1210). In explaining its decision on the second ground, the court quoted a 1997 law review article, which in turn had quoted from a 1968 opinion from the Arkansas Supreme Court: "'[T]he disorder to the judicial system does not result solely from the confusion caused by one person serving in multiple capacities at trial. Rather, the roles of advocate and witness are entirely irreconcilable and should not be undertaken by a single individual. . . . [T]he advocate-witness dilemma "puts counsel in the position of both advocate and witness, one of which requires the lawyer to be partisan and the other of which requires him to be factual. It thus robs the trial of that appearance of fairness which should characterize every court hearing."'" (*Kennedy*, at p. 1210.)

In concluding Konvitz's representation of Blue Rider at trial while also testifying on its behalf would "detract from the proper administration of justice," the trial court quoted this general description of the basis for the advocate-witness rule, as well as comments explaining the parallel rule in the ABA Model Rules of Professional Conduct (ABA Model Rule 3.7) and in the ABA's former Model Code of Professional Responsibility, all pointing to the conclusion that the roles of advocate and witness are inconsistent. The court then added its own observation that these dual roles create the risk of error and confusion, and "the

17

trier of fact [here, the court itself] will constantly keep wondering whether the advocate-witness is acting under the appropriate role such that it will distract from the arguments and evidence presented."

We certainly do not disagree with the underlying rationale for Rule 3.7. Nor do we suggest it is normally a good idea for a client to consent to one of its lawyers serving as both trial counsel and a witness testifying to disputed issues. But the generic concerns expressed here by the court apply to any case in which a lawyer acts as both advocate and witness. Notwithstanding those potential problems, Rule 3.7—unlike ABA Model Rule 3.7 upon which most of the trial court's analysis was based—specifically excepts situations in which the client has given its informed written consent. (See generally *Lopez v. Lopez*, *supra*, 81 Cal.App.5th at p. 424 [the ABA rule lacks any informed-consent exception].)[8] As discussed, in those instances, disqualification is not justified absent a convincing demonstration by the moving party of a potential for injury to the integrity of the judicial process (e.g., *Lopez*, at p. 423; *Lyle v. Superior Court*, *supra*, 122 Cal.App.3d at p. 482)—a showing that must be based on an adequate factual record, not overarching statements of policy or conclusory allegations by the party seeking disqualification. (See *Lopez*, at p. 425; *Smith, Smith & Kring v. Superior Court*, *supra*,

---

[8]	Rather than the exception in California's advocate-witness rule for cases in which the client has given its informed written consent, rule 3.7(a)(3) of the ABA Model Rules of Professional Conduct allows a lawyer to act as an advocate at a trial in which the lawyer is also likely to be a necessary witness when "disqualification of the lawyer would work substantial hardship on the client."

60 Cal.App.4th at p. 582; see also *Doe v. Yim*, *supra*, 55 Cal.App.5th at p. 584 [trial court must make specific findings of fact when deciding recusal motions under Rule 3.7].) No such evidentiary showing was made here, and the trial court made none of the required factual findings.

The court in *Lyle v. Superior Court*, *supra*, 122 Cal.App.3d 470, in issuing a peremptory writ of mandate directing the superior court to vacate its order disqualifying a law firm because two of its members intended to testify at trial, advised, "[T]he trial court, when balancing the several competing interests, should resolve the close case in favor of the client's right to representation by an attorney of his or her choice." (*Id.* at p. 482.) This is not even a particularly close case. It was error for the trial court not to resolve the Geringer parties' motion in favor of allowing Blue Rider to be represented by Konvitz, its counsel of choice.

## DISPOSITION

The September 20, 2021 order granting the motion to disqualify Konvitz is reversed. Blue Rider is to recover its costs on appeal.


PERLUSS, P. J.

We concur:


FEUER, J.


MARTINEZ, J.

19